## KLOTZ v. IPPOLITO.
### No. 62.

District Court, S. D. Texas, Galveston Division.

July 21, 1941.

A. B. Wilson and L. A. Kottwitz, both of Houston, Tex., for plaintiff.

Maurice M. Davis and C. E. Coolidge, both of Houston, Tex., for defendant.

KENNERLY, District Judge.

By Complaint filed January 13, 1941, plaintiff instituted this suit against defendant, to recover overtime under the Fair Labor Standards Act of 1938, Sections 201 to 219, Title 29 U.S.C.A. An amended complaint, upon which the case was tried, was filed April 5, 1941. It is alleged that plaintiff was employed by defendant July 12, 1937, and worked for defendant until February 6, 1940, when he was discharged. Plaintiff sues for overtime under such Act from October 24, 1938, until February 6, 1940, the time of his discharge, and for damages and attorney's fees. .

Defendant answered, admitting plaintiff's employment on July 12, 1937, and that plaintiff worked for him from that date until discharged February 6, 1940, but denies liability to plaintiff for overtime. Defendant also pleads the Texas two-year statute of limitation. He also seeks to offset against any recovery by plaintiff an indebtedness by plaintiff to defendant in the sum of $275 and interest, etc., thereon, arising out of the payment by defendant of that sum on plaintiff's note to the City National Bank of Galveston, upon which defendant was an endorser. He also prays that in case plaintiff be denied recovery against defendant, that defendant have judgment over against plaintiff for the $275, with interest, etc.

Plaintiff filed replication, setting forth that under the Constitution of Texas, defendant may not offset such indebtedness against plaintiff's claim for overtime wages, damages, and attorney's fees.

The facts are substantially as follows:

(a) Plaintiff was employed by defendant July 12, 1937, and continued in defendant's employ at Galveston, Texas, in this Division and District, until February 6, 1940, at which time he was discharged. Under the oral contract of employment, plaintiff was employed to work 6 days per week, at the rate of $5 per day of 9 hours, beginning approximately at 7 A. M. and ending approximately at 5 P. M. There was no agreement by defendant to pay plaintiff anything additional if and when plaintiff worked more than 9 hours per day. On one occasion when plaintiff worked only 4½ days, or

40½ hours, in one week, he was paid for 4½ days at $5 per day, or $22.50.

(b) When the Fair Labor Standards Act became effective October 24, 1938, defendant believing that neither his business nor plaintiff's employment came within the scope of such Act, there was no change either in plaintiff's rate of pay per day nor his hours of employment.

Because the employment of plaintiff was by the day of 9 hours, and 6 days a week, it follows, and I find, that plaintiff's regular rate of pay was, and he was paid, for 44 hours per week during the first year such Act was in force, $24.45. His rate of pay was, and he was paid, for 10 hours per week in excess of such 44 hours (overtime) during such first year, $5.55. And plaintiff's regular rate of pay was, and he was paid, for 42 hours per week during the part of the second year he worked while such Act was in force, $23.33. His rate of pay was, and he was paid, for 12 hours per week in excess of such 42 hours (overtime) during such period, $6.67.

(c) Plaintiff claims that he frequently worked more than 9 hours per day, and produced a diary purporting to show quite in detail that he did. This, defendant strenuously denied. I think the preponderance of the evidence on that issue is with defendant, and I find that plaintiff did not work more than 9 hours per day. He was paid the contract price for all the work he did.

(d) Defendant has a bottling plant and is engaged in the manufacture, processing and bottling of soda water, etc., and selling same at wholesale, which business he carries on in the City of Galveston. He bought outside of Texas during the time plaintiff was employed by him one or possibly two of the ingredients (syrup) used by him in manufacturing, processing, and bottling soda water, etc. He bought outside of Texas during the time plaintiff was employed by him some of the bottles in which the soda water, etc., was bottled. When such syrup and such bottles were received, they were stored in defendant's place of business where they remained until they were needed and used in his bottling business. These purchases outside of Texas were relatively unimportant, and plaintiff performed no work in connection therewith. None of the soda water, etc., bottled by defendant was sold or delivered outside of Texas during the time plaintiff was employed by defendant. Defendant's soda water, etc., business has been carried on in the same way since plaintiff left his employ.

(e) Defendant, during the time of plaintiff's employment, was also engaged in the wholesale sale of beer. He had a large warehouse in which his supply of beer, bottles, cans, etc., were kept. He bought beer in quite large quantities from the manufacturers thereof in New Orleans, Louisiana, and Peoria, Illinois, and it was shipped to him by rail in freight cars or by water on barges, with bill of lading attached to draft, which was sent through the banks. When he paid the draft at the bank, he obtained the bill of lading and took possession of the beer in the box car or on the barge, and moved it to and stored it in his warehouse. It was then sold from time to time in lots or parcels in the regular course of his wholesale beer business. A negligible amount of beer was sold at retail. He made no sales nor deliveries of beer outside of Texas.

Defendant's customers returned to him the empty beer containers, and he returned them to the beer manufacturers. Defendant's beer business has been carried on in the same way since plaintiff left his employ.

(f) Plaintiff was employed by defendant primarily to have charge of defendant's bottling plant. It appearing that his duties in the bottling plant would not consume all of his time, there was also included in his employment the unloading into defendant's warehouse, from time to time, of beer from railroad freight cars or barges. Also the loading of empty beer containers into freight cars, etc., to be returned to the beer manufacturers. From time to time, during his employment, plaintiff helped unload beer and helped load empty containers, but his principal and major employment was in the soda water business or bottling department. The unloading of beer and the loading of empty containers was infrequent, and plaintiff only worked unloading beer and/or loading empty containers a part of the time during approximately one-fourth of the weeks he worked for defendant. During the other three-fourths of the weeks he worked for defendant, he worked wholly or exclusively in the soda water, etc., bottling business.

(g) Plaintiff, as head of defendant's bottling department, decided when to bottle soda water, etc., hired, controlled and discharged employees of that department,

and had general executive supervision thereof. He had, however, no supervision or control over any of defendant's employees engaged in the beer business, and insofar as the beer business was concerned, plaintiff was not a bona fide executive or administrator as defined in such Act.

(h) The principal business of defendant, both as to volume and money value, was the beer business. Such beer business was probably one and one-half or two times more than the soda water, etc., business. Taken as a whole, defendant's chief business was the intrastate sale of beer and the intrastate manufacture and sale of soda water, etc. While the purchase outside of Texas of the bottles and syrup for the soda water, etc., and the purchase outside of Texas of beer, and the return of the empty containers, were transactions in interstate commerce or commerce within the meaning of the Act, such transactions were only incidental to defendant's main intrastate business.

(i) Defendant has not complied, and has made no effort to comply, with the Fair Labor Standards Act of 1938, because he has been advised that his business is not covered thereby.

(j) Plaintiff is indebted to defendant in the sum of $275, same being the amount paid by defendant on a note of plaintiff endorsed by defendant at a bank, with interest at 6% from date of payment.

(k) I find $200 to be a reasonable attorney's fee for bringing and prosecuting this suit by plaintiff's attorneys.

■ 1. Defendant contends that since, under the contract between the parties, plaintiff was paid $30 per week for a week of 54 hours, which was more than the minimum wage for the maximum hours fixed by the Act (25 cents an hour for a 44-hour week during first year and 30 cents an hour for a 42-hour week during second year), that regardless of any other question in the case, plaintiff may not recover. But not so. In addition to fixing a minimum wage and maximum hours, the Act requires that the employer shall pay the employee for overtime (i. e., for more than 44 hours and 42 hours, respectively) "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207. This, defendant has not done. Under the contract, as shown by the findings above, plaintiff was to be paid, and was paid, at the rate of $0.555 per hour for 44 hours and 42 hours

per week, respectively, and at exactly the same rate per hour for overtime of 10 hours and 12 hours per week, respectively. If plaintiff was employed in commerce, he should have been paid $0.555 an hour for regular time and $0.832 for overtime.

It should be understood that the rate of $0.555 was not arrived at by applying a formula such as was contended for by appellant in Fleming v. Belo, 5 Cir., 121 F.2d 207; Id., D.C., 36 F.Supp. 907, but by finding the meaning of and construction of the contract between the parties.

Defendant stands upon Fleming v. Belo, supra, and contends that the opinion there upholds defendant's claim here. The contracts under construction in Fleming v. Belo are thus described in the opinion: "The district judge found; that the contracts between employer and employee were actual bona fide contracts of employment; that they were intended to, and did, really fix the regular rates at which each employee was employed; and that as made and carried out, they compensated the employees at a regular rate considerably in excess of the minimum fixed by the statute, and for overtime at a rate not less than one and one-half times that regular rate."

There is no contention that the contract here, as there, was not an actual bona fide contract of employment. It is also true, as stated, that, as there, the amount is fixed that plaintiff was to be paid, and was paid, for 44 hours and 42 hours, respectively (regular rates), and for 10 hours and 12 hours, respectively, in excess of the 44 hours and 42 hours (overtime). But there is an important difference between the cases. There, the rate for the overtime is not less than one and one-half times the regular rate, and here it is less. Here, the rate per hour for overtime is the same as the rate per hour for regular time. Fleming v. Belo is not controlling here.

Defendant also stands upon Reeves v. Howard County Refining Company, D.C.N. D.Tex., 33 F.Supp. 90, 91. There, according to the opinion, Reeves for some time had been working for a *"flat salary of $150 per month."* After the effective date of the Act, there was no change, and he continued to work at that rate. The opinion does not disclose that there was, as here, a contract by which it could be found and determined how much of the $150 per month was for regular time and how much for overtime. The $150 per month was in excess of the minimum wage fixed by the

Act, Reeves apparently failed to sustain the burden of proof and show that the $150 did not include time and a half for overtime, and the Court doubtless presumed that the parties were complying with, and not violating, the law, and that the $150 per month did in fact include not only a lawful regular rate, but a lawful rate of not less than one and one-half times the regular rate for overtime.

Since under the contract here, plaintiff's rate of pay per hour for overtime is not one and one-half times his regular rate of pay, the case presented is apparently different from Reeves v. Howard County Refining Company.

■ 2. I think it is perfectly clear that insofar as defendant was purchasing beer outside of Texas and having it shipped into Texas and was shipping the empty beer containers back to the manufacturers of the beer, he was engaged in commerce within the meaning of the Act. And that plaintiff in assisting in unloading the beer from the railroad cars and barges into defendant's warehouse and in loading the empty containers on the railroad cars for shipment back to the beer manufacturers was engaged in commerce within the meaning of such Act. But since such beer came to rest in defendant's warehouse and there remained over long periods of time before being sold and delivered to defendant's customers, and such transactions in commerce were only incidental to defendant's intrastate business of selling beer, such business of selling beer was not in commerce as defined by the Act, but entirely intrastate in character.

■ It is equally clear that defendant's soda water, etc., business was wholly intrastate and not in commerce, and that plaintiff in his work in connection therewith was not engaged in commerce within the meaning of the Act.

■■ From what has been said, it follows that during the weeks plaintiff unloaded beer or loaded empty beer containers, he is entitled to recover overtime under the Act. As found hereinbefore, during about one-fourth of the weeks plaintiff worked for defendant between October 24, 1938, and February 6, 1940, he unloaded beer and/or loaded empty containers, and his recovery for those weeks will be the difference between $0.555 per hour which plaintiff has been paid for overtime (10 hours and 12 hours per week, respectively), and $0.832 per hour, which he should have been paid, to which will be added an equal amount as liquidated damages, and $200 attorney's fees. This is subject, however, to defendant's plea of limitation, which is next disposed of.

■ 3. So far as the Act itself is concerned, an employee may sue his employer thereunder at any time. He may wait any period of time until the passing of time shall have destroyed all documentary evidence and the memory of witnesses has faded or become dim. I do not think the Congress so intended. I think it was intended that the Statute of Limitation in each State should be followed, that the Texas two-year statute of limitation[1] is applicable, and that plaintiff may not recover overtime for any week prior to two years before filing (January 13, 1941) of this suit.

■ 4. The evidence shows that plaintiff is indebted to defendant in the sum of $275, besides interest thereon from the date defendant paid plaintiff's note at the Bank. Such sum should be offset against any sum which defendant may owe plaintiff. I think plaintiff's contention that the Constitution of Texas[2] which prohibits the garnishment of current wages is applicable here, and would prevent such offset, is without merit. The recovery given

[1] Article 5526 of Vernon's Annotated Texas Civil Statutes is as follows:

"Art. 5526. * * * There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

*    *    *    *    *    *

"4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

"5. Actions upon stated or open accounts, other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents. In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted. Acts 1841, p. 163; G.L. vol. 2, p. 627."

[2] Article XVI, Section 28, Vernon's Ann.St.Const., is as follows: "No current wages for personal service shall ever be subject to garnishment."

to employees under the provisions of this Act is not wages within the meaning of the Texas Constitution.

5. Plaintiff in his work for defendant unloading beer and loading empty beer containers was not working in a bona fide executive capacity as defined by the Act, and therefore was not exempt from the provisions of the Act.

Let a decree be prepared and presented in accordance herewith.