**DUNCAN et al. v. MONTGOMERY WARD & CO., Inc.**

Civil Action No. 461.

District Court, S. D. Texas, Houston Division.

Dec. 16, 1941.

George Goodenow and Combs & Dixie, all of Houston, Tex., for plaintiffs.

Baker, Botts, Andrews & Wharton, by Tom M. Davis, of Houston, Tex., and John A. Barr, Brooks Wynne, and Stuart S. Ball, all of Chicago, Ill., for defendant.

KENNERLY, District Judge.

This is a suit by Plaintiffs against Defendant under the Fair Labor Standards Act of 1938, Sections 201 to 219, Title 29 U.S.C.A. Plaintiff Duncan alleges that he entered the employ of Defendant prior to October 24, 1938, the effective date of such Act, and continued in its employ until December 31, 1940, and that during said time, he worked more hours per week and was paid less wages per week than permitted by such Act, and he sues for wages, overtime, penalty, and attorney's fees. Plaintiff Larry E. Nicholson alleges that he likewise entered the employ of Defendant prior to October 24, 1938, and continued in such employ until November 28, 1940, and makes a similar allegation and a similar claim.

Plaintiffs say that the business of Defendant and the character of service performed by them for Defendant come within the scope of the Act. This, Defendant denies. Defendant also says that the nature of its business is such that Plaintiffs, as its employees, are exempt from the provisions of the Act under Section 13 thereof, Section 213, Title 29 U.S.C.A. Defendant also says that that portion of Plaintiffs' claims which accrued prior to February 3, 1939, two years prior to the filing of this suit (February 3, 1941), is barred by and under the Texas Two Year Statute of Limitation.

The facts are substantially as follows:

(a) Defendant is engaged in two lines of business in Houston, Texas, in this District and Division, i. e., the retail sale of merchandise in Houston and vicinity, and the mail order sale of merchandise. It is not contended that Plaintiffs were employed in the mail order business or performed any service in connection therewith, but only in the retail business.

(b) After setting forth facts showing the jurisdiction of this Court and referring to exhibits showing the hours each week that each Plaintiff worked, and the amount received each week by each Plaintiff, the Pre-Trial Stipulation of the parties is as follows:

"IV. Defendant, Montgomery Ward & Co., Incorporated at all times material to this action operated a retail store in Houston, Texas. The business and function of this retail store was the selling of mer-

chandise at retail. A stock of merchandise was carried on hand and sales were made over the counter from such stock. The sales were made to the general consuming public in small quantities for actual use by the purchaser and not for resale, and may be characterized as retail sales.

"The physical equipment of the store was the same as that of the usual large retail store, such as selling counters, shelves for display and arrangement of merchandise, storerooms, warehouse space, display windows, cash registers, and office equipment.

"The organization of the store consisted of a manager, two assistant managers, selling employees, office employees, warehouse and stockroom employees and service employees. The majority of the employees were engaged in selling of merchandise. Services such as delivery, installation and repair of merchandise were made available by the store to its customers, but only in connection with its retail selling. The store sought to serve all members of the general consuming public.

"The retail store occupied a building located at the corner of Capitol and Travis Streets in the downtown business area of the City of Houston and the necessary warehouse space known as the retail store warehouse, was in a separate building located alongside a railroad track. Prior to the last week of September, 1940, the retail store warehouse consisted of a portion of the building located at 1117 Vine Street in the City of Houston. After this date the retail store warehouse occupied a building located at 1302 Nance Street in the City of Houston.

"Substantially all of the sales of this retail store were in intrastate commerce; the merchandise sold was in the State of Texas at the time of the sale, the purchase price was paid to defendant in the State of Texas, and the merchandise purchased was delivered in the State of Texas. Less than one per cent. (1%) of the sales made by this retail store involved the delivery of merchandise outside the State of Texas.

"V. During all times material to this action, defendant's retail store business in the City of Houston required the maintaining of a stock of merchandise on hand in order to meet the needs of customers. Because of limitations of space in the downtown business area of the City of Houston, the high rents in this area, and the absence of a railroad spur at its store building at the corner of Capitol and Travis Streets,

defendant found it necessary for reasons of economy and efficient business operation to have warehouse space located elsewhere for the storage and handling of its stock of merchandise. The merchandise which was received and carried in stock in the retail store warehouse was not to meet specific orders of any customer but to meet the anticipated demands of all customers. Prior to the last week of September, 1940, the warehouse space consisted of a portion of building located at 1117 Vine Street and the retail store merchandise there was kept separate, distinct, and apart from any other merchandise stored in this building. After that time the retail store warehousing operations were conducted in the building located at 1302 Nance Street. Both of these buildings provided the defendant's retail store with facilities alongside a railroad siding for the convenient unloading of merchandise received in freight cars and provided space for the storage of merchandise. By storing a portion of its stock of merchandise in these buildings, the retail store was able to devote more of the space in the building at the corner of Travis and Capitol Streets to sales floors for the display and sale of merchandise.

"The employees who worked in the retail store warehouse were engaged in receiving, storing and handling merchandise, and preparing it for sale and delivery. Their duties were those usually performed by employees engaged in warehousing for a retail store business, such as receiving and uncrating merchandise received from points both within and without the state of Texas, contacting carriers in connection with shipments, checking incoming merchandise to see if it corresponded to the goods ordered, checking condition of goods received, preparing memoranda concerning incoming goods for purposes of records, storing of merchandise, preparing merchandise for display, preparing merchandise for delivery, preparing labels for shipment of goods, making bills of lading on outbound goods, crating goods for shipment, and other duties necessary for receipt, storage, invoicing, crating and uncrating, forwarding and disposition of merchandise for a retail store. The defendant made no sales in the warehouse, that is, no goods were placed on counters, displayed and offered for sale therein, nor did cash exchange for goods take place therein.

"During the year 1939 the retail store warehouse received 7,189,671 pounds of

merchandise. Two and seventeen hundredths per cent. (2.17%) of this merchandise was handled by the employees engaged in warehousing activities and was shipped to defendant's other retail stores located within the State of Texas; fifty-four hundredths of one per cent. (.54%) of this merchandise was handled by employees engaged in warehousing activities and was shipped to defendant's other retail stores located outside the State of Texas. The remainder of this merchandise, ninety-seven and twenty-nine hundredths per cent. (97.29%) of the total, was handled by the employees engaged in warehousing activities and was placed in the stock of merchandise of the defendant's retail store in Houston.

"During the year 1940 the retail store warehouse received 5,064,767 pounds of merchandise. Eight and onehalf per cent. (8.5%) of this merchandise was handled by the employees engaged in warehousing activities and was shipped to defendant's other retail stores located within the State of Texas; seventy-eight hundredths of one per cent. (.78%) was handled by the employees engaged in warehousing activities and was shipped to defendant's other retail stores located outside the State of Texas. The remainder of this merchandise, ninety and seventy-two hundredths per cent. (90.72%) of the total, was handled by the employees engaged in warehousing activities and was placed in the stock of merchandise of the defendant's retail store in Houston.

"During each of the years 1939 and 1940, approximately three per cent. of the merchandise held in stock by the retail store in Houston was determined to be overstock. Overstock merchandise is that quantity of merchandise which is held in stock by a retail store in excess of the quantity sufficient to meet the demands of its customers. This overstock was removed from the stock of the Houston retail store and forwarded to other retail stores of defendant as overstock merchandise. The forwarding of this overstock merchandise was handled by the retail store warehouse.

"VI. During the period from October 24, 1938, to December 31, 1940, plaintiff, Charles W. Duncan, was employed by defendant and was engaged in warehousing activities as above described, in the retail store warehouse. During the period from October 24, 1938, to July 31, 1940, plaintiff, Larry E. Nicholson, was employed by defendant and was engaged in warehousing activities, as above described, in the retail store warehouse.

"The plaintiffs were hired by the management of the retail store; they were on the retail store payroll; their time was computed by the retail store timekeeper; they were paid from funds of the retail store, and they worked under the supervision of the assistant manager of the retail store. The retail store warehouse had no employment office, timekeeper, cashier, or management separate from that of the defendant's retail store.

"VII. During the period from August 1, 1940, to November 28, 1940, plaintiff, Larry E. Nicholson, did not work in connection with the warehousing activities but worked in the delivery department in the building located at the corner of Capitol and Travis Streets. During this period of time the employees of the delivery department, including plaintiff Nicholson, were engaged in such activities as taking merchandise from the delivery dock into the store, preparing merchandise for display and sale, preparing merchandise already sold for delivery, and placing merchandise already sold on the delivery dock where it would be picked up by the trucker making the delivery, or by the customer himself.

"VIII. During all times material to this action defendant also operated a warehouse for its mail order business in Houston, Texas. The mail order business of defendant was entirely separate, distinct and apart from defendant's retail store in Houston, and was operated as a separate business. The mail order warehouse had its own manager, employees, and other facilities. During all of this period the mail order warehouse occupied a portion of the building located at 1117 Vine Street but this portion of this building was separate, distinct, and apart from the portion of this building occupied by the retail store warehouse. The mail order warehouse merchandise consisted of different items from those in the retail store warehouse, and the mail order merchandise was inventoried on a different basis from the retail store merchandise. The mail order merchandise was never commingled or stored together with the retail store merchandise. The mail order branch of defendant's business and the retail store warehouse occupied this building just as separate tenants might rent space in a public warehouse.

"The plaintiffs, Charles W. Duncan and Larry E. Nicholson, did not ever work in

connection with the mail order branch of defendant's business, and were never on the payroll of the mail order branch."

1. That portion of Plaintiffs' claims which accrued prior to February 3, 1939, two years prior to the date of filing this suit (February 3, 1941), is barred by the Texas Two Year Statute of Limitation (Article 5526, Vernon's Annotated Civil Statutes) pleaded by Defendant, and Plaintiffs may not recover same here. Klotz v. Ippolito, D.C., 40 F.Supp. 422, 423.

2. While it is true that Defendant purchased outside of Texas and there was shipped into Texas to Defendant some of the merchandise handled by it, and Defendant from time to time shipped a small portion of its merchandise to other of Defendant's stores located outside of Texas, and Defendant made a very small portion of its retail sales to persons outside of Texas, and was to that extent engaged in commerce, same was clearly but incidental to Defendant's main business of the intrastate retail sale of merchandise. Klotz v. Ippolito, supra. Unlike the facts in Klotz v. Ippolito, and those in Super-Cold Southwest Company v. McBride, 5 Cir., 124 F.2d 90 decided December 1, 1941, where the employee was engaged in loading and unloading merchandise shipped in commerce, it is not at all clear that either of the Plaintiffs had any connection with such interstate transactions, and if they did, it is not shown, as Plaintiffs must show, how much they worked on interstate transactions, and how much they worked on intrastate transactions. Klotz v. Ippolito, supra; Super-Cold Southwest Company v. McBride, supra; Prescription House, Inc. v. Anderson, D.C.S.D.Tex., 42 F.Supp. 874, decided December 11, 1941.

The conclusion is that Plaintiffs have not shown themselves entitled to recover under the Act.

3. The portions of Section 13 of the Act, Section 213, Title 29 U.S.C.A., material here are as follows: "The provisions of sections 206 and 207 shall not apply with respect to (1) *any employee employed* in a bona fide executive, administrative, professional, *or local retailing capacity,* or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); or (2) *any employee engaged in any retail* or service *establishment the greater part of whose selling* or servicing *is in intrastate commerce."*

Defendant claims that under the second exception quoted, its business is a retail establishment, the greater part of whose selling is in intrastate commerce, and that the Act does not, therefore, apply to it or to Plaintiffs, its employees. That this is true, I entertain no doubt. The Stipulation with respect to the manner in which Defendant does business, the persons to whom it sells, the manner of sale, the quantities sold, etc. all show that Defendant's business is an establishment such as is referred to in the second exception quoted.

But Plaintiffs insist that since Defendant is unable to have all of its stock of merchandise in its downtown store, and must keep a portion thereof in its retail warehouse, that such fact robs it of its character as a retail establishment. Plaintiffs cite Rulings of the Administrator. Due deference should, of course, be paid by the Courts to the Rulings of the Administrator, but where, as here, the words of the Congress and the provision of the Act defining a retail establishment are clear, plain, and unambiguous, such provisions should not be enlarged or diminished either by the Rulings of the Administrator or the Courts. Super-Cold Southwest Company v. McBride, supra. Prescription House, Inc., v. Anderson, supra.

The conclusion reached is that Defendant is a retail establishment within the meaning of the second exception quoted, notwithstanding the fact that it uses a retail warehouse, purchases some of its merchandise in interstate commerce, ships some merchandise from its retail warehouse to other warehouses in other States, and sells an insignificant amount of its goods (less than 1%) in interstate commerce.

The conclusion also is that Plaintiffs are employees who were employed in a local retailing capacity, within the meaning of the first exception quoted.

Judgment for defendant.