## OWIN v. LIQUID CARBONIC CORPORATION.

### Civil Action No. 463.

District Court, S. D. Texas, Houston Division.

Dec. 19, 1941.

J. W. Cherry and G. W. Staton, both of Houston, Tex., for plaintiff.

Baker, Botts, Andrews & Wharton and J. C. Hutcheson, III, all of Houston, Tex., for defendant.

KENNERLY, District Judge.

This is a suit by Plaintiff against Defendant under the Fair Labor Standards Act of 1938, Sections 201 to 219, Title 29 U.S.C.A. Plaintiff alleges that he was an employee of Defendant from the effective date of the Act (October 24, 1938) to January 13, 1940, that during such time, the business of Defendant and the character of service performed by Plaintiff came within the scope of the Act, and that he worked more hours per week than permitted by such Act. He sues for pay for 1789 hours overtime, penalty, and attorney's fees.

Defendant denies and combats Plaintiff's claim, says that Plaintiff, as its employee, was exempt from the provisions of the Act under Section 13 thereof, Section 213, Title 29 U.S.C.A., in that Plaintiff was employed in a bona fide executive or administrative capacity, and also says that even if Defendant and Plaintiff were within the scope of the Act, the evidence shows that Plaintiff has, within the meaning of the Act, been paid in full for all the time he worked. Defendant also claims that that portion of Plaintiff's claim which accrued prior to February 21, 1939, two years prior to the filing of this suit (February 20, 1941), is barred by the Texas Two Year Statute of Limitation, which Statute Defendant pleads.

The facts are substantially as follows:

(a) Plaintiff was employed by Defendant for some time prior to the effective date of the Act (October 24, 1938). He was employed by Defendant from October 24, 1938, to January 13, 1940, and the hours he actually worked each week during such time are shown by records and are set forth in Exhibit "A" attached to Defendant's Amended Answer filed August 26, 1941. The time ranged from 64 to 80 hours per week.

(b) Prior to the effective date of the Act, Defendant paid Plaintiff a flat salary of $160 per month, and there was no change after the Act became effective. There was no agreement between Plaintiff and Defendant that any part of the $160 per month was for regular time under the Act or any part for overtime under the Act.

(c) Defendant is a corporation organized under the Laws of the State of Delaware, with one of its branch offices and plants located in the City of Houston, in this District and Division, where it was engaged in the intrastate manufacture and sale of carbonic gas and also in the intrastate sale of dry ice. Approximately two-thirds of its gross income came from the manufacture and sale of carbonic gas, and approximately one-third from the sale of dry ice. The total sales of dry ice were approximately 6,000 pounds per day, or 42,000 pounds per week. All the carbonic gas was manufactured and sold within the State of Texas. All of the dry ice was sold within the State of Texas, except about 300 or 400 pounds per week which was shipped to one customer (Borden Sales Company) in Lake Charles, Louisiana.

The dry ice which Defendant sold was manufactured by Defendant in Defendant's plants in Dallas, Texas, and Ada, Oklahoma, and shipped to Houston to Defendant by railroad and trucks.

(d) The parties have filed the following Stipulation:

"1. That the Defendant Liquid Carbonic Corp. had no facilities at its Hous-

ton plant to manufacture dry ice during the period at issue in this cause.

"2. That the Liquid Carbonic Corp. received two (2) to three (3) freight carloads per week of dry ice from its Ada, Oklahoma, plant during the summer months and about three (3) truckloads per week during the winter months during the period of this suit.

"3. That regular shipments of dry ice from Liquid Carbonic in Houston, Texas to the Borden Sales Co. in Lake Charles, La. averaged three (3) or four (4) times per week and about one hundred (100) pounds per shipment during the period of this suit."

(e) Defendant's principal office and place of business was in Chicago, Illinois, and its principal Texas office and place of business was in Dallas, Texas, where the officer of the Company who directed and had charge of Defendant's Texas business had his office. Defendant's business and work at Houston was divided into three Departments, i. e., an Engineering Department, in charge of an Engineer who reported direct to and worked under the direction of the Chicago office of Defendant, a Sales Department, in charge of a Manager thereof who reported direct to and worked under the direction of the Dallas office, and an Office and Bookkeeping Department, which reported direct to and worked under the direction of the Dallas office. Neither of these Departments in Houston had any control or supervision over the other, except that Stallings, the head of the Sales Department, seems to have been more closely in touch with Defendant's Officers outside of Houston than anyone else in Houston, and they seem to have depended upon him for suggestions, reports, and information concerning the business of Defendant in Houston, and from time to time gave him special authority with respect thereto.

(f) Plaintiff was the manager and head of Defendant's Office and Bookkeeping Department in Houston, kept the books, handled exclusively the Company's bank account, had the combination to Defendant's safe, kept the pay rolls of employees, assisted in paying the employees, and had the management, supervision and direction of such of the business of the Company at Houston as was not in the hands of the Engineering Department and the Sales Department. He had the power to employ and discharge men who worked in the Office and Bookkeeping Department and some who worked in the Engineering Department. He at times supervised the unloading of dry ice from the trucks or railroad cars into Defendant's warehouse, and may have at times actually physically aided in unloading same, but the evidence with respect thereto is neither satisfactory nor convincing. He may at times have had something to do with the shipment of dry ice to the Borden Sales Company in Lake Charles, Louisiana, but the evidence with respect thereto is neither satisfactory nor convincing. There is no evidence as to what amount of his time Plaintiff devoted either to supervising the unloading of the dry ice or in making the shipment of the small quantity of dry ice which was shipped to Lake Charles, Louisiana, if he had anything to do therewith.

1. The portion of Plaintiff's claim which accrued prior to February 20, 1939, two years prior to the date of the filing of this suit (February 20, 1941), is barred by the Texas Two Year Statute of Limitation, pleaded by Defendant, which prevents Plaintiff's recovery thereof here. Article 5526, Vernon's Annotated Texas Civil Statutes. Klotz v. Ippolito, D.C., 40 F.Supp. 422, 423.

2. While it is true that by shipping the dry ice from its plant in Ada, Oklahoma, to its plant in Houston, Texas, and by the small shipments of dry ice from Defendant's plant in Houston to the Borden Sales Company in Lake Charles, Louisiana, Defendant was engaged in commerce (United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L. R. 1430), it is also true that such shipments were merely incidental to Defendant's main business of the intrastate manufacture and sale of liquid carbonic gas and the intrastate sale of dry ice. Klotz v. Ippolito, supra. However, any employee of Defendant who had to do with either of such shipments was engaged in commerce and comes within the Act, unless exempt thereunder. But the evidence here does not show how much of the time Plaintiff worked about the shipments of dry ice from Oklahoma to Texas, nor how much of the time, if any, Plaintiff worked about the shipments of dry ice to Lake Charles, Louisiana. In other words, it is not shown how much Plaintiff worked in intrastate transactions and how much in interstate transactions. Super-Cold Southwest Company v. McBride, 5 Cir., 124 F.2d 90, de-

cided December 1, 1941; Klotz v. Ippolito, supra; White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92, decided December 12, 1941.

3. The material portions of Section 13 of the Act, Section 213, Title 29 U.S.C.A., under which Defendant claims it and Plaintiff are exempt, are as follows: "The provisions of sections 206 and 207 shall not apply with respect to (1) *any employee employed in a bona fide executive, administrative,* professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator)."

Under the evidence and the findings herein, my conclusion is that Plaintiff during the time he worked for Defendant was employed in a bona fide executive and administrative capacity within the meaning of the quoted portion of the Act as defined and delimited by the Administrator, and effective during the period of employment, and as construed by the Courts and the Administrator.

4. In this view of the case, it is not necessary to determine, and I do not determine, questions raised with respect to whether, taking into consideration the monthly amounts paid Plaintiff, and the hours per week during which Plaintiff worked, Plaintiff was paid more than was required under the provisions of such Act, but see Warren Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42 decided December 9, 1941.

Judgment for Defendant.