**MOSES v. McKESSON & ROBBINS, Inc.**

**No. 621.**

District Court, S. D. Texas, Houston Division.

Feb. 20, 1942.

Paul A. Smith and Ne Cochran, both of Houston, Tex., for plaintiff.

Andrews, Kelley, Kurth & Campbell, of Houston, Tex. (F. L. Andrews and W. M. Streetman, both of Houston, Tex.) for defendant.

KENNERLY, District Judge.

In this suit by Plaintiff, August Whitfield Moses, against Defendant, McKesson & Robbins, Inc., under the Fair Labor Standards Act of 1938, Sections 201 to 219, Title 29, U.S.C.A., Plaintiff alleges that he was employed by Defendant from October 24, 1938, to March 20, 1941, during which time he alleges Defendant was engaged in commerce, and that Plaintiff, as Defendant's employee, was so engaged. It is also alleged that Plaintiff worked in excess of the maximum hours permitted and was paid less than the minimum wages fixed by such Act. He sues for the difference between the wages paid him and the wages he says should have been paid him, for overtime, and for penalties and attorney's fees under such Act.

(a) As a result of a Pre-Trial Hearing, the facts have been stipulated as follows:

"Plaintiff is a resident of Harris County, Texas.

"This cause is a suit by plaintiff to recover overtime alleged to be due under the terms of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219 (as amended), and if plaintiff's employment is subject to regulation under the Fair Labor Standards Act the Court has jurisdiction of this cause.

"Defendant, McKesson & Robbins, Inc., is a Maryland Corporation having permit to do business within the State of Texas.

"Plaintiff was employed by defendant as a truck driver from prior to October 24, 1938, to on or about March 20, 1941.

"Defendant's business, insofar as material to this cause, is that of a wholesale drug warehouse.

"That large portions of the goods stored in defendant's warehouse are made in States other than the State of Texas and shipped to defendant at Houston, Texas, and placed in the warehouse by defendant.

"That in the normal course of defendant's business all orders for drugs and other supplies, commodities and goods held and stored in such warehouse are filled by making deliveries from the oldest stock in said warehouse, and normally no orders are tak-

en or filled by defendant anywhere other than at said warehouse.

"Plaintiff's duties were those of a truck driver employed by defendant to make deliveries from said warehouse, and all of said deliveries were made within the State of Texas, most of them in Harris County, Texas. No deliveries were made from said warehouse to any points outside the State of Texas.

"There is no controversy in this cause as to the number of hours worked by plaintiff, nor as to the actual compensation paid plaintiff; the only question is whether plaintiff's employment was subject to regulation under the Fair Labor Standards Act with reference to overtime, and it is agreed that in the event the Court should find that plaintiff's employment was subject to regulation under the Fair Labor Standards Act the sum due the plaintiff for overtime is the amount of $109.64, not including liquidated damages.

"It is further agreed that in the event plaintiff is entitled to recover in this cause, plaintiff's attorneys are entitled to a reasonable attorneys' fee and it is agreed that such fee may be fixed by the Court."

(b) Fifty dollars ($50.00) would be a fair and reasonable attorney's fee herein.

1. As to that portion of the goods stored in Defendant's warehouse which were shipped to it from states other than Texas, Defendant, up to the time such goods were received and came to rest in its warehouse, was engaged in commerce within the meaning of the Act, but such engaging in commerce was only incidental to Defendant's main business of the local selling of goods in Intrastate Commerce. Klotz v. Ippolito, D.C., 40 F.Supp. 422, 425. Unlike the employee in Klotz v. Ippolito, Plaintiff had nothing to do with such goods prior to the time they so came to rest. Indeed, Plaintiff had nothing to do with them until called upon, from time to time, as truck driver for Defendant to take them from the warehouse and deliver them to Defendant's customers. According to the Stipulation, Plaintiff's only duties were that of a truck driver. All of such deliveries were made within the State of Texas, and most of them within a small area—Harris County.

Under these circumstances neither the local selling and delivery by Defendant to its customers, nor Plaintiff's work as a driver of Defendant's trucks making such deliveries, was either "in commerce or in

the production of goods for commerce" within the meaning of the Act. Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176; Klotz v. Ippolito, supra.

2. Plaintiff in his brief says: "Since the merchandise which Plaintiff delivered by truck wholly within the State of Texas were at one time 'goods in commerce', it is necessary for the Court to decide *when* such goods changed their character from 'interstate commerce' to 'intrastate commerce'. Plaintiff says that such change does not take place until the goods are delivered to their intended goal (retail merchants), and that the mere stoppage thereof for a short time does not accomplish such change. No doubt such goods have a definite place of 'ultimate delivery' to some retail merchant long before they are ever manufactured, and thereby intended to be delivered by devious routes to such place of destination. The goods are manufactured, packed and shipped by train or water to Houston, Texas, picked up by drivers of trucks (who incidentally are covered by the Motor Carriers Act), and taken to the warehouse, where they remain for a short time, (it would be impracticable to have them remain very long, for such shipments would not be made in the first place if a ready market were not available, or if same had not already been contracted for). At this point our Plaintiff steps into the picture, all arrangements having theretofore been made for the ultimate delivery of such 'goods of commerce' to the retail merchant. Each stopping place, whether on the railway platform or at the warehouse, and the various means of transportation, have long been contemplated and foreseen by the Defendant, who, it can be fairly assumed, knew all of the aforesaid steps, and the place of ultimate delivery long before the original shipment thereof was made, or even manufactured, if the court pleases. The warehouse of the Defendant in this case was used by it merely for its own convenience for the express purpose of supplying its contracted orders. Such goods could have easily been shipped directly to the retail merchants, and no doubt many such shipments were so made, and under such facts it is admitted that such goods would never have undergone a change from 'interstate' to 'intrastate'. Those employees engaged in such deliveries from the railway station to the ultimate retailer undoubtedly would be covered by the Motor Carrier's Act, and it has

been so held by our courts. Why, then, should it be said that where through the will of the shipper such goods were sent to a warehouse for a short time rather than direct to the retail merchant, they immediately lost their 'commerce character' and when handled thereafter they were strictly in 'intrastate business', and the employees of the same company handling the goods after going to the warehouse were not engaged in 'interstate commerce.' It does not seem logical to the attorneys for the Plaintiff that such was intended to be the law, although it is here admitted that there are cases holding to the contrary, and as cited by Defendant in its brief. No new cases can at this time be brought before this Honorable Court by Plaintiff except that in the case of F. W. Dover Lumber Co. v. United States, 312 U. S. 100, the Supreme Court held that, where a manufacturer in filling orders for shipment of goods to extrastate customers has the intention or expectation that such goods will reach such customers, the manufacturer is covered by the Federal Statute in question."

Plaintiff no doubt is referring to the Darby case (United States v. Darby, 312 U. S. 100, 61 S.Ct. 451, 455, 85 L.Ed. 609). There, the employer had been indicted under the Act. It is there said:

"The indictment charges that appellee is engaged, in the state of Georgia, in the business of acquiring raw materials, which he manufactures into finished lumber with the intent, when manufactured, to ship it in interstate commerce to customers outside the state, and that he does in fact so ship a large part of the lumber so produced. There are numerous counts charging appellee with the shipment in interstate commerce from Georgia to points outside the state of lumber in the production of which, for interstate commerce, appellee has employed workmen at less than the prescribed minimum wage or more than the prescribed maximum hours without payment to them of any wage for overtime. Other counts charge the employment by appellee of workmen in the production of lumber for interstate commerce at wages of less than 25 cents an hour or for more than the maximum hours per week without payment to them of the prescribed overtime wage. Still another count charges appellee with failure to keep records showing the hours worked each day a week by each of his employees as required by § 11(c) and the regulation of the Administrator, Title 29, Ch. 5, Code of Federal Regulations, Part 516, and also that appel-

lee unlawfully failed to keep such records of employees engaged 'in the production and manufacture of goods, to-wit lumber, for interstate commerce.' "

Such indictment was sustained by the Supreme Court. Without doubt, under the rule there laid down by the Supreme Court, those persons, whoever they were, who sold and shipped goods to Defendant in Interstate Commerce were, in so doing, as was Defendant, engaged in commerce, and their employees who were engaged in that particular activity were engaged in commerce. But under the Stipulation, that is not the case we have here. Neither does the Stipulation support Plaintiff's suggestion that some of such goods were specially manufactured for Defendant's customers, or some of them, and shipped to Defendant for delivery to such customers.

■ Undoubtedly, under some circumstances, Congress, in its regulation of Interstate Commerce, may also regulate intrastate activities where they have a substantial effect on Interstate Commerce. United States v. Darby, supra; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; Local 167 v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839; Houston, E. & W. Texas Ry. Co. v. United States (Shreveport Case), 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Southern R. Co. v. United States, 222 U.S. 20, 32 S.Ct. 2, 56 L. Ed. 72; Baltimore & Ohio R. Co. v. Interstate Commerce Comm., 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; Jacob Ruppert, Inc., v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L. Ed. 260; Everard's Breweries v. Day, 265 U.S. 545, 44 S.Ct. 628, 68 L.Ed. 1174; Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036; Railroad Commission of State of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1086; United States v. New York Central R. Co., 272 U.S. 457, 464, 47 S.Ct. 130, 71 L.Ed. 350; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Thornton v. United States, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013; United States v. Rock

Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. But I know of no case, and Plaintiff cites none, which goes so far as to hold that where the facts are as here stipulated, Congress has in this Act undertaken to do so. The holding in Super-Cold Southwest Co. v. McBride, supra; Jax Beer Co. v. Redfern, supra; Swift & Co. v. Wilkerson, supra; and Klotz v. Ippolito, supra, is to the contrary.

From what has been said, it follows that judgment must be rendered for Defendant. Let a decree be drawn and presented accordingly.