## LORBER v. ROSOW.
### Civil Action No. 1080.

District Court, D. Connecticut.
Nov. 16, 1944.

Richard S. Levin, of Hartford, Conn., for plaintiff.

Benjamin Rabinovitz and Louis M. Schatz, of Schatz & Schatz, all of Hartford, Conn., for defendant.

SMITH, District Judge.

This is an action under the Fair Labor Standards Act of 1938, June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219, against an employer to recover unpaid overtime, statutory compensation, attorney's fees, and costs. The defendant is owner of a wholesale drug and liquor business; the plaintiff, a former employee who was in charge of the drug department shipping room.

The case raises a number of questions under the Act. The business of the employer is claimed in this action to be in interstate commerce insofar as he (1) orders and receives goods from, and (2) returns damaged or obsolete goods to, suppliers in other states, (3) deals in any way with goods as a factor for suppliers in other states, (4) sells to his only out-of-state customer, the Petroline Company, or ships to other out-of-state concerns at the request of suppliers, (5) participates in any way in sales made by out-of-state manufacturers' representatives in the state, the so-called "drop" orders.

The actual communication and transportation across state lines in items (1) and (3) appear to be commerce interstate in character within the meaning of the Act, even though the employer's principal business is sales to retailers within the state. See Walling, Adm., v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

There appears no reason, however, to hold that transactions which would be intrastate in character under the Jacksonville Paper case—sales within the state from a stock of goods which have come to rest in the warehouse—if made by a local principal, should become interstate in nature because made by a factor or agent of an out-of-state principal. The test would appear to be whether the interstate journey has, in good faith, come to an end before the sale is made. Compare Moses v. McKesson & Robbins, D. C., 1942, 43 F.Supp. 528

(Maryland corporation doing business in Texas). It is true that Binderup v. Pathe Exchange, 1923, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308, and Swift & Co. v. U. S., 1905, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518, ruled sales, by an agency, transactions in interstate commerce even though the goods had to some extent come to rest within the state before the sale. However, as the Supreme Court has indicated, Kirschbaum Co. v. Walling, Adm., 1942, 316 U.S. 517, 520-521, 62 S.Ct. 1116, 86 L.Ed 1638, decisions under other acts are of little assistance in reaching a definition of (interstate) commerce as the term is used in this Act. The Binderup and Swift cases, supra, are therefore not controlling on this point, in view of the decisions under the Act here in question. The evidence here shows that goods dealt with as a factor were mingled with, and handled, in the same manner except as to method of payment as goods purchased and sold by the employer on his own account. There is no evidence of any temporary halt at the warehouse in an effort to break up the continuity of the voyage to a retailer, or of goods shipped from outside the state to fill a particular order from a retailer, or indeed, intended for sale to any particular retailer. Goods handled under item (3), therefore, may be treated, so far as the commerce in them in the meaning of the Fair Labor Standards Act of 1938 is concerned, identically with the goods bought and sold by the employer on his own account.

▇ Goods handled under item (4), sent out of the state either to the Petroline Company or at the request of a supplier to some other customer, are clearly in interstate commerce. The number of transactions of this sort is, however, small and the percentage of the employer's business represented by them minute.

▇ The "drop" sales of item (5) are of two classes, (a) orders taken by suppliers' salesmen within the state, and filled from the stock of goods on hand in the employer's warehouse, which may be treated as those in item (3), the sales as factor, and (b) orders so taken filled direct by the out-of-state suppliers and billed through the employer. These latter are clearly interstate transactions, but plaintiff had nothing to do with them at any stage.

▇▇ It is the nature of the plaintiff's work which determines whether he is within the protection of the Act. Kirschbaum v. Walling, supra. If his activity in a substantial part in any workweek is in procurement or receipt of goods from other states, he is employed in (interstate) commerce within the Act, and must be paid one and one-half times his regular hourly rate of pay for each hour of work above the maximum prescribed by the Act for that workweek, unless exempted by other provisions of the Act. Walling v. Jacksonville Paper Co., supra; Walling v. Mutual Wholesale Food & Supply Co., D.C., 1942, 46 F.Supp. 939; Walling v. Goldblatt Bros., 7 Cir., 1942, 128 F.2d 778; Klotz v. Ippolito, D.C., 1941, 40 F.Supp. 422; Eddings v. Southern Dairies, D.C., 1942, 42 F.Supp. 664.

The holding in Ouendag et al. v. Gibson, D.C., 1943, 49 F.Supp. 379, appears to be based on the casual and comparatively minor nature of the plaintiff's duties in interstate commerce.

▇ In the case at bar, the plaintiff daily spent a substantial portion, some 20%, of his time in the procurement of goods from without the state, in that he checked the items in stock in the warehouse to determine the amounts needed, wrote out postcard orders for the goods and delivered the orders to the office manager to be addressed and mailed to the out-of-state suppliers. He is, therefore, within the Act and must be paid the rates therein provided for overtime.

The action was brought by complaint filed on November 16, 1943, for overtime claimed due for the period from October 24, 1938, to the termination of his employment on September 25, 1942. It is admitted that there is a failure of proof as to hours worked for the period prior to January 2, 1940.

▇ The defendant has pleaded the statute of limitations, claiming that the section (section 6010, General Statutes of Connecticut, Revision of 1930) relating to oral contracts applies. The weight of authority appears to support this interpretation of the nature of the basis of recovery under the Act. See Klotz v. Ippolito, supra; Rosenthal v. Atkinson, D.C., 1942, 43 F.Supp. 96; Owin v. Liquid Carbonic Corporation, D.C., 1941, 42 F.Supp. 774; Overnight Motor Transportation Co., Inc. v. Missel, 1942, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682; Northwestern Yeast Co. v. Broutin, 6 Cir., 1943, 133 F.2d 628; Loggins v. Steel Construction Co., 5 Cir., 1942, 129 F.2d 118. Contra Lorenzetti v. American Trust Co.

et al., D.C., 1942, 45 F.Supp. 128, applying limitation for a statutory penalty, which appears to be inconsistent with the reasoning of the Missel case, supra.

I conclude, therefore, that, for each workweek from November 17, 1940, to September 25, 1942, the plaintiff is entitled to overtime compensation for hours worked in excess of forty, if not otherwise exempted under the Act.

■ The defendant claims that the plaintiff is exempted as one employed in a bona fide executive or administrative capacity. The defendant has the burden of proof on this question of exemption. The regulations interpreting this provision of the Act are set forth in the defendant's Exhibit "D".

■ The situation portrayed by the evidence in this case makes somewhat difficult the determination of this question. The business was small and family run. (The plaintiff and the defendant were married to sisters.) The plaintiff was a trusted employee of long standing, in charge of the shipping room of the drug department, with additional duties, principally daily keeping track of the supply on hand of some ten thousand to twenty thousand drug items and reordering what was necessary, and opening and closing the place of business each day.

The plaintiff is employed in a bona fide executive capacity only if he meets all six conditions laid down by Section 541.1 of the regulations, the defendant's Exhibit "D." Title 29, Chapter V, Part 541, Code of Federal Regulations. Amended Regulations effective October 24, 1940. He meets the requirements of (A) since his primary duty is the management of the drug department, and (B) he customarily and regularly directs the work of the other eleven to thirteen employees therein; as to (C) the evidence is meager, due largely to the infrequent labor turnover. Whether or not the plaintiff had authority to hire and fire, his designation to pick up casual laborers, as well as the discussion with him of complaints from customers indicate that his suggestions would at least be given particular weight; as to (D) the plaintiff did exercise a limited discretion in controlling the flow of goods to the drug department; as to (E) his salary qualifies him; but (F) depends upon the nature of his work in checking outgoing orders in the shipping room of the work department. Was that work of the same nature as that performed by non-exempt employees? Certainly it exceeded 20% of the number of hours worked each workweek by the non-exempt employees under his direction. If that work were performed by one who had no charge over other men, it would clearly be considered mechanical or manual and non-exempt, since, in the main, it consisted of comparing the goods brought together by the clerk, item by item, with the written order left by the salesman, and manually moving the goods, item by item, as checked, into the next bin. The plaintiff, therefore, does not meet the qualifications of Section 541.1(F), and is not exempt as an executive unless the proviso, that (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, is applicable.

It is not a branch establishment which the plaintiff heads. It is the largest department of the business, physically separate from the liquor department, it is true, but in the same group of buildings making up the main establishment of the defendant of which the drug department is an integral part.

Nor can it be considered independent. It is a department functioning with and under the office which adjoins it as part of the establishment of the defendant.

Section 541.2 of the Regulations, the defendant's Exhibit "D," defines the term employee—"employed in a bona fide administrative capacity."

The plaintiff qualifies as to salary under (A) but fails to qualify under either (B) (1), (2), or (3), because of the manual nature of the greater part of his work.

It must be held, therefore, that the defendant has failed to establish that the plaintiff is excepted from the operation of the Act as employed in a bona fide executive or administrative capacity.

■ The plaintiff, since a substantial part of his employment in each workweek was in interstate commerce, is entitled to recover, for each workweek since November 17, 1940, pay at the rate of one and one-half times his regular hourly rate of pay for each hour worked in excess of forty, (less the amount already paid him for those hours), plus an equal amount as liquidated damages, interest, attorney's fees, and costs.

He has been paid for each week in which he worked over forty hours during this period, $60 for the total time worked, with no additional payment for overtime.

He was a salaried employee whose hours of work fluctuated from week to week under his oral contract of employment. The "regular" rate for each workweek is the quotient of the total weekly wage divided by the number of hours of work, and the compensation for overtime must be at one and one-half times that hourly rate for hours beyond forty, the maximum number of hours allowed before overtime. Adams et al. v. Union Bank, 2 Cir., 144 F.2d 290; Overnight Motor Transportation Co., Inc. v. Missel, supra. And see also Interpretative Bulletin No. 4, as revised November 1940, of the Office of the Administrator, Wage and Hour Division, Department of Labor, Paragraph 12.

The plaintiff has testified that he took one week's vacation each summer, but the dates are not established by the evidence. The weeks of August 25, 1941, and September 14, 1942, are the summer weeks in which the place of business was open the greatest number of hours. Since the plaintiff has not established definitely which week was the vacation week, the longest week in each vacation period is eliminated in arriving at the hours worked by him.

I credit his testimony that he opened and closed the place of business as part of his regular duty on the days he worked, and have established the hours worked from the testimony as to the hours of opening and closing based on the American District Telegraph Company records. The evidence, however, does not give any definite basis for the time spent at lunch each day other than the use of a one-hour lunch period in establishing the nominal 44½-hour week, and any estimate of the time less than the hour, actually spent, would necessarily be based on speculation. I have, therefore, deducted one hour for lunch for each weekday worked, and each Saturday in which the place of business was open seven hours or more.

The plaintiff argues that the regular rate of pay is $60 for 44½ hours. But this would contemplate additional hours each week for which no compensation, either regular or overtime, was to be paid. The contract, as interpreted by the parties, appears to be rather one for a workweek of variable hours at a rate of $60 for the total number of hours actually worked during the week, which would run over a minimum of 44½ hours a week to an extent depending on the amount of business to be done each day.

Since the plaintiff has received for each week straight time pay at the regular rate for each hour worked, including hours over forty, he is entitled to recover in this action one-half the regular rate for each hour over forty, plus an equal amount as liquidated damages, plus interest at 6% (see Adams et al. v. Union Bank, supra), plus an attorney's fee of five hundred ($500) dollars, and his costs.

Form of judgment in accordance with this opinion may be submitted by stipulation or on notice.

Computation of overtime recoverable in accordance with the memorandum of decision may be submitted with the form of judgment.