**ROSENTHAL v. ATKINSON et al.**
**Civil Action No. 499.**

District Court, S. D. Texas, Houston Division.

Jan. 15, 1942.

Leon C. Levy, Morris G. Rosenthal, and William Z. Rozan, all of Houston, Tex., for plaintiff.

Dillon Anderson, John Mackin, and Baker, Botts, Andrews & Wharton, all of Houston, Tex., for defendants.

KENNERLY, District Judge.

This is a suit by plaintiff, a former employee of defendants, against defendants for wages for alleged overtime, liquidated damages, and attorney's fees under the Fair Labor Standards Act of 1938 (Sections 201 to 219, Title 29, U.S.C.A.) from (as filed) October 24, 1938, to May 25, 1940. However, the parties have stipulated that wages alleged to be owing plaintiff prior to April 9, 1939, are barred by the Texas Two Year Statute of Limitation, and that from January 1, 1940, to May 25, 1940, plaintiff's duties were such that the parties were exempt under said Act, so that the suit is narrowed down to wages for alleged overtime from April 9, 1939, to January 1, 1940, and damages and attorney's fees.

There is no doubt that defendants were, during such period, engaged in commerce within the meaning of Section 3 of the Act, but questions are raised as to whether plaintiff's employment, defendants' business, and the relations of plaintiff and defendants were such as to bring them under the exemptions found in Section 7 and 13 of the Act. I find it necessary to decide only one of these questions, i.e., whether plaintiff, during such time, was employed in a bona fide executive and/or administrative capacity within the meaning of Subdivision (a) (1) of Section 13 of the Act.

All of the facts on all issues and questions are set forth in the stipulation of the parties filed at the pre-trial hearing and/or the findings of fact filed herewith, but only facts necessary to decision are quoted here:

(a) It is stipulated that:

"The defendant has been engaged at all times material hereto in the business of compressing and storing cotton at a plant owned and operated by it in the City of Houston, Harris County, Texas.

"At all times material hereto more than 95% of the cotton handled by the defendant in its said Houston plant was grown and produced in the State of Texas, and more than 95% of all cotton handled by the said defendants at said Houston plant is ultimately shipped to some point in another state or goes into foreign commerce.

"From a time prior to October 24, 1938 to May 25, 1940, the plaintiff was employed by the defendant at a monthly salary of

$175 per month, under and pursuant to a contract of employment made prior to the effective date of the Act.

"The plaintiff's work was all related to the defendant's business of compressing and storing cotton at its said Houston plant, and his duties and service constituted an integral part of the office which handled all of the business of the defendant.

"The parties hereto agree that on September 24, 1940, the Administrator announced a seasonal exemption from the hours provision of the Fair Labor Standards Act of 1938 for a period of not more than fourteen (14) work weeks during each calendar year, under which seasonal exemption provision employees of concerns engaged in the storing of raw cotton would be entitled to no overtime compensation except where same exceeded 56 hours per week, and plaintiff admits that it is not necessary for a concern so engaged to designate any particular weeks in order to take advantage of said exemption provision.

"The defendant is engaged in the business of the compressing of cotton, and operates for profit a plant in Houston, Harris County, Texas, in which the cotton is compressed and in which it is stored in the same plant before and after the compressing function. Said plant contains elaborate and heavy machinery, known as a press, which is used to compress bales of cotton to a higher or greater density; and, as aforesaid, it contains in addition thereto a large area or space where cotton is kept and protected from the elements before and after it is pressed. Said plant also contains switching facilities, scales, docks, runways and office facilities, and other usual and necessary types and kinds of facilities for the handling, recording, and safekeeping of cotton. The handling of cotton at its Houston compress is done by defendant for a charge paid by defendant's customers, the owners of the cotton, which charge covers the function of compressing the same and the safekeeping and custody thereof in defendant's storage space and storage facilities operated in connection with the compress for a reasonable period before and after the cotton is compressed and in some instances where the movement of the cotton is delayed, and it is allowed to remain in the defendant's plant for longer periods, an additional charge is made.

"All of said facilities hereinabove described are intimately interrelated each with the other, and constitute integral but not integrated parts of the unit, which is the plant, operating for the compressing of cotton. The movement of the cotton from the docks adjacent to defendant's plant and the safekeeping thereof before and after said cotton is compressed, are necessary and incidental to the function of compressing the same.

"The place of employment where defendant is engaged in the compressing of cotton (and was at all times material hereto) necessarily included the warehouse, docking, and switching facilities owned and operated by the defendant, and the plaintiff Rosenthal was employed and worked during the times in question in said place of business.

"On October 24, 1938, the Administrator issued a definition of 'employee employed in a bona fide executive and administrative capacity' as said language is used in Section 13(a) (1) of the Act, reading as follows:

" 'The term "employee employed in a bona fide executive (and) administrative * * * capacity" in Section 13(a) (1) of the Act shall mean any employee whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed, and who customarily and regularly directs the work of other employees therein, and who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight and who customarily and regularly exercises discretionary powers, and who does no substantial amount of work of the same nature as that performed by non-exempt employees of the employer, and who is compensated for his services at not less than $30 (exclusive of board, lodging or other facilities) for a work-week.'

"On the 24th of October, 1940, the Administrator issued separate definitions of administrative employees and of executive employees, and such definitions are as follows:

" '*Executive:*

" 'The term "employee employed in a bona fide executive * * * capacity" in Section 13(a) (1) of the Act shall mean any employee

" '(A) whose primary duty consists of the management of the establishment in which

he is employed or of a customarily recognized department or subdivision thereof, and

" '(B) who customarily and regularly directs the work of other employees therein, and

" '(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

" '(D) who customarily and regularly exercises discretionary powers, and

" '(E) who is compensated for his services on a salary basis of not less than $30 per week (exclusive of board, lodging or other facilities), and

" '(F) whose hours of work of the same nature as that performed by non-exempt employees do not exceed twenty per cent of the number of hours worked in any workweek by the non-exempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment.

" 'Administrative:

" 'The term "employee employed in a bona fide * * * administrative * * * capacity" in Section 13(a) (1) of the Act shall mean any employee

" '(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

" '(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is non-manual in nature and requires the exercise of discretion and independent judgment; or

" '(2) who performs under only general supervision responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines, requiring special training, experience or knowledge and which requires the exercise of discretion and independent judgment; or

" '(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment.' "

(b) During the period mentioned, defendants, as stated, owned and operated the Houston Compress, having several hundred employees, and W. M. Burton was their Superintendent. Burton testified that he regarded plaintiff as his "right-hand man," meaning that he looked to plaintiff to carry out his orders and directions and to handle the details of the business. And that in his (Burton's) absence, plaintiff was in complete charge of the Compress and its business. This was clearly true, and it is shown that Burton was absent much of the time, giving his time and attention to another compress or compresses. Except Burton, plaintiff was the highest paid employee of defendants at the Compress.

Plaintiff was also Office Manager of the Compress, had entire charge of the office, and directed the work of the employees therein. In connection therewith, he handled voluminous correspondence with customers of the Compress and others, respecting the business of the Compress, requiring him to have and exercise, and he did have and exercise, broad discretionary powers. He did, of course, have the defendants' Rules, Regulations, and Tariffs to guide him, and in difficult matters, the benefit of conference with, and direction from, Burton when Burton was present, but he nevertheless was required to use, in most instances, his own judgment. Apparently, plaintiff did not actually employ and discharge employees, but Burton looked to him for suggestions and recommendations respecting such matters.

(c) While it is true that plaintiff lived in a house belonging to defendants near the Compress and there is some ground to believe that his presence at the Compress at night may have been to some extent due to the closeness of his residence to his work, the fair inference to be drawn from the evidence is that he worked 54 hours per week from April 9, 1939, to August 26, 1939, except two weeks vacation in July, and 83 hours per week from August 26, 1939, to January 1, 1940. His pay was, as stated, $175 per month.

1. The portion of Section 13 applicable here is as follows: "The provisions of sections 6 [206] and 7 [207] shall not apply with respect to (1) *any employee employed in a bona fide executive, administrative,* professional, or local retailing capacity, or in the capacity of outside salesman (as such

terms are defined and delimited by regulations of the Administrator)."

Considered both in the light of the Regulations of the Administrator, and independently, I think the facts here clearly bring the case within such exemption, and that plaintiff may not recover. Owin v. Liquid Carbonic Corporation, D.C.S.D.Tex., 42 F.Supp. 774, decided December 19, 1941.

Judgment for defendants.