[No: 29084.   *En Banc.*   March 23, 1944.]

M. L. COTTON, *Appellant,* v. WEYERHAEUSER TIMBER COMPANY, *Respondent.*[1]

[1]Reported in 147 P. (2d) 299.

*Fred M. Bond,* for appellant.

*W. E. Heidinger* and *T. J. Hanify,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover a specified amount alleged to be due him for overtime work performed under certain regulations of the fair labor standards act of 1938, and for an equal amount claimed by him as liquidated damages accruing under that same act. Upon a trial before the court without a jury, findings were made and a judgment dismissing the action was entered. Plaintiff appealed.

The theory upon which the appellant, W. L. Cotton, predicated his complaint was that at the times here involved the respondent, Weyerhaeuser Timber Company, was engaged in the manufacture of logs and timber products for "commerce," as that term is defined in the fair labor standards act of 1938; that, during the period covering the years 1938 to 1940, inclusive, appellant was employed by the respondent as a bookkeeper and clerk; that, from October 24, 1938, to and including August 31, 1940, he had worked, during certain weeks, a total of 558½ hours in excess of the aggregate number of hours permitted by the Federal act as the maximum period of weekly employment performable without payment of additional compensation; that for such excess hours of work he was entitled to be paid at the rate of one and one-half times his regular rate

of pay; that he was further entitled to recover, under the provisions of the Federal statute, liquidated damages in an amount equal to the total amount due him for overtime work, and, in addition, a reasonable attorney's fee and costs of the action.

Respondent, in its answer, denied generally the material allegations of the complaint and further pleaded as affirmative defenses: (1) that during the entire period here involved its activities consisted of the production of logs for sale within the state of Washington exclusively; (2) that the appellant is estopped from claiming any additional or overtime compensation, for the reason that, if he did work overtime, he nevertheless failed to report that fact to the respondent, as was his duty to do, but, instead, performed such work without the knowledge, sufferance, or permission of the respondent; (3) that, from October 24, 1938, to August 1, 1940, appellant was employed by the respondent in a bona fide executive capacity (as that term was and is defined by regulations of the administrator of the wage and hour division) and was therefore expressly exempted from the application of the minimum wage and maximum hour provisions of the fair labor standards act of 1938; further, that on and after August 1, 1940, appellant was employed in the capacity of bookkeeper, whose duty was to keep an accurate record of the hours worked by him and to report the results to the respondent, but that appellant failed to comply with that duty; and (4) that during the entire period of appellant's alleged services he was employed by respondent at a fixed and agreed monthly salary, which was paid to him periodically as it accrued, in full of the amounts then owing to him.

The affirmative matter of the answer, in so far as it affected appellant's alleged right of recovery, was denied by him in his reply.

Upon the evidence introduced by the respective parties, the trial court made and entered findings of fact to the effect: (1) that at all times here involved respondent was engaged in conducting logging operations in Grays Harbor county, Washington, and that appellant during his em-

ployment by respondent was engaged in the production of goods for *interstate* commerce or in an occupation necessary to that character of production; (2) that appellant was employed in a bona fide executive capacity (as defined and delimited by regulations of the administrator of the wage and hour division) and was expressly exempted from the application of the minimum wage and maximum hour provisions of the fair labor standards act of 1938; (3) that appellant was employed at a monthly salary which exceeded the minimum wages prescribed by the Federal act for the years involved and that such salary was paid to him in full, currently as it accrued, prior to the commencement of this action; and (4) that appellant had failed to prove by a preponderance of the evidence that he was employed by the respondent for any work week in excess of the time prescribed by the Federal act.

The fair labor standards act of 1938 (29 U. S. C. A., §§ 201-219) was enacted June 25, 1938, and, as to §§ 206 and 207 thereof, became effective October 24, 1938. The express purpose of the act, as stated in § 202, is, through the exercise by Congress of its regulatory power over commerce *among the several states,* to correct and as rapidly as practicable to eliminate certain detrimental labor conditions declared to exist in industries engaged in commerce or in the production of goods for commerce.

The material portions of the various sections of the act applicable to this case are as follows:

"§ 203. [29 U. S. C. A.] Definitions

"As used in sections 201-219 of this title—

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication *among the several States or from any State to any place outside thereof.*

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . .

"(e) 'Employee' includes any individual employed by an employer.

"(g) 'Employ' includes to suffer or permit to work.

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or

articles or subjects of commerce of any character, or any part or ingredient thereof, . . .

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." (Italics ours.)

"§ 206.   Minimum wages;   . . .

"(a)   Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1)   during the first year from the effective date of this section [October 24, 1938], not less than 25 cents an hour,

"(2)   during the next six years from such date, not less than 30 cents an hour,   . . ."

"§ 207.   Maximum hours

"(a)   No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1)   for a workweek longer than forty-four hours during the first year from the effective date of this section [October 24, 1938],

"(2)   for a workweek longer than forty-two hours during the second year from such date, or

"(3)   for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

"§ 213.   Exemptions

"(a)   The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator);   . . ."

"§ 216.   Penalties; civil and criminal liability

"(b)   Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the em-

ployee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

On October 24, 1938, the administrator issued certain regulations, among which was section numbered 541.1 defining and delimiting the term "any employee employed in a bona fide executive, administrative, . . . capacity" appearing in § 213 of the Federal act. That section of the regulations reads as follows:

"Section 541.1—Executive and Administrative

"The term 'employee employed in a bona fide executive (and) administrative . . . capacity' in Section 13 (a) (1) [§ 213] of the Act shall mean any employee

"(1) whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed, and

"(2) who customarily and regularly directs the work of other employees therein, and

"(3) who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(4) who customarily and regularly exercises discretionary powers, and

"(5) who does no substantial amount of work of the same nature as that performed by non-exempt employees of the employer, and

"(6) who is compensated for his services at not less than $30.00 (exclusive of board, lodging, or other facilities) for a workweek."

On October 24, 1940, the administrator issued regulations similar to those referred to above, except that subdivision (5) of the former regulations was amended to provide that the hours of work of the same nature as that performed by nonexempt employees should not exceed *twenty per cent*

of the number of hours worked by the nonexempt employees under the executive employee's direction.

The first question presented to, and decided by, the trial court was whether or not the respondent was engaged in commerce, or in the production of goods for commerce, of an *interstate* character. The court found specifically that respondent was engaged in business of that type. We are not entirely convinced that the evidence warranted that finding. In our opinion, there was ample evidence to support a finding that respondent's activities at its Clemons branch which, as will hereinafter more fully appear, was the particular logging plant involved in this action, were wholly of an *intrastate* nature.

However, in view of the grounds upon which this opinion is based, we shall assume, for the purposes of this case, that this particular finding of the trial court is correct, and that at the times and with respect to the plant here involved the respondent employer was, by reason of the interstate character of its business, subject to the provisions of the fair labor standards act of 1938.

The next question considered by the trial court was whether, during the times with which we are here concerned, appellant was employed by the respondent simply as a "bookkeeper and clerk," thus bringing him within the purview and protection of §§ 206, 207 of the Federal act, or conversely, whether he was employed in a bona fide executive capacity (as defined and delimited by regulations of the administrator), thus subjecting him to the exemptions prescribed by § 213 of the act and excluding him from the application and benefits of §§ 206, 207.

If the appellant was employed in the former capacity, worked overtime, and did not receive the compensation provided by the Federal statute, as he contends, then he would be entitled to recover, unless by his acts or conduct he is now estopped to assert his alleged claim. If, on the other hand, he was employed in the latter capacity, as the respondent contends, then, under the facts in this case, he would in no event be entitled to recover for the alleged overtime work. Upon that issue, the trial court found that

appellant was employed in a bona fide executive capacity, as defined and delimited by the administrator's regulations, and therefore was not entitled to recover compensation for the alleged overtime.

■ The crux of that particular issue was whether or not the facts concerning the character of appellant's employment brought him within the applicability of § 213, excluding him from the protection of the wage and hour provisions of the Federal act. Whether § 213 is applicable in a given instance must be determined from all the facts shown by the record in the particular case. *Wood v. Central Sand & Gravel Co.* (D. C. Tenn.), 33 F. Supp. 40, 46; *Collins v. Kidd* (D. C. Texas), 38 F. Supp. 634; *White v. Jacobs Pharmacy Co.* (D. C. Ga.), 47 F. Supp. 298.

The issue was thus, primarily, a factual one, dependent upon the evidence produced before the court and presenting, in turn, the question of burden of proof. Necessarily, the credibility of the witnesses was also a factor to be considered.

■ Since the respondent employer asserted and now relies upon § 213 of the act, which exempts certain employees from the benefits of §§ 206, 207, the burden rested upon it to show that the employee, the appellant herein, was subject to the exemption. *Helena Glendale Ferry Co. v. Walling* (C. C. A. 8th), 132 F. (2d) 616; *Snyder v. John J. Casale, Inc.* (D. C. N. Y.), 49 F. Supp. 926; *Bush v. Wilson & Co.*, 157 Kan. 80, 138 P. (2d) 457; *Schneider v. Sports Vogue*, 35 N. Y. S. (2d) 341.

■ It is a precept, frequently declared and generally recognized, that the fair labor standards act is a remedial one and must therefore be liberally construed to effect its purposes. *Fleming v. Hawkeye Pearl Button Co.* (C. C. A. 8th), 113 F. (2d) 52; *Carleton Screw Products Co. v. Fleming* (C. C. A. 8th), 126 F. (2d) 537; *Musteen v. Johnson* (C. C. A. 8th), 133 F. (2d) 106; *Wood v. Central Sand & Gravel Co., supra; Fleming v. American Stores Co.* (D. C. Pa.), 42 F. Supp. 511, 516.

The evidence in the case is to be weighed and considered

in the light of these accepted rules. Certain facts are not disputed, and these we shall state first, as follows:

The respondent is a Washington corporation and, since 1937, has conducted a logging operation known as the "Clemons" branch, in Grays Harbor county. Respondent's main office is in Tacoma, and its Clemons branch office is in Melbourne, a few miles distant from Montesano. Mr. F. W. Byles is, and during the period here involved was, the general manager of the Clemons branch. During that same period, however, Mr. Byles was in poor health and was away from the office a great part of the time.

Appellant had been employed at the Clemons branch since about 1918. When the business was taken over by the respondent in 1937, appellant was made "office manager." From October 24, 1938 (the effective date of the wage and hour provisions of fair labor standards act of 1938), to February 28, 1939, inclusive, appellant was paid a monthly salary of $295, of which $275 was paid in cash and $20 in the form of rental for a dwelling house owned by the respondent and occupied by the appellant. From March 1, 1939, to and including May 31, 1939, he was paid a monthly salary of $160, of which $140 was paid in cash, and $20 in the usual form of rental. On June 1, 1939, his salary was restored to the amount first above stated and so remained for the remainder of the time involved in this action. These amounts of monthly salary were all greatly in excess of the minimum wage amounts specified in § 206 of the fair labor standards act.

At this point, the conflict in the evidence begins. Appellant's evidence, consisting for the most part of his own testimony, was, in substance, as follows:

He was employed by, and worked for, the respondent throughout the period here involved simply as a bookkeeper and clerk, although he was given the nominal title of "office manager." He kept regular hours, according to the time schedule fixed by the respondent. From Monday through Friday of each week he worked from seven o'clock in the morning until twelve noon, and from one o'clock to five o'clock in the afternoon, aggregating nine hours a day.

On Saturdays he worked from seven o'clock in the morning until twelve noon, a period of five hours. This would amount to a total of fifty hours of work a week, or an excess of six hours a week during the year following October 24, 1938, and an excess of eight hours a week during the period following October 24, 1939.

In addition to these regular hours fixed by the respondent, appellant was requested and required by his employer, in 1939 and 1940, to do extra work of a special nature, in connection with rescaling and rechecking certain rafts of logs and compiling certain information necessary to be had by the respondent in making up its tax reports and claims for fuel oil refunds. In order to perform these extra services, it was necessary for appellant to work at night, both at the office and at his home.

Appellant's work, as a whole, consisted of bookkeeping, general clerical work, stenographic services, answering telephone calls, checking time sheets, compiling data for income tax and other reports, writing letters, sorting and distributing mail, and purchasing office supplies. He had no executive or administrative authority with respect to respondent's business, did not hire or discharge any of its employees, and exercised no discretionary powers. He merely executed the orders and discharged the duties imposed upon him by his superiors, whether the directions given by them emanated from the branch office or from the main office.

Upon the evidence outlined to this point appellant claimed to be entitled to the sum of $1,456.68 for overtime work; also to an equal amount as liquidated damages under the Federal statute; and to an attorney's fee of $750. Appellant produced several witnesses whose testimony was offered in circumstantial corroboration of his claim, but that testimony, in our opinion, was of little weight or value.

Respondent's evidence, consisting of the testimony of five witnesses, one at least of whom was entirely disinterested, gave a different version of the nature of appellant's employment. That testimony, taken as a whole, was, in

substance or as the court was entitled to accept it, as follows:

During the period here involved appellant was employed by the respondent to perform the duties of office manager and bore that official title throughout that period. He was paid, and regularly received, the monthly salary set forth above. As such manager he had full charge and direction of the office, or at least of its bookkeeping department, and of the work done therein. He had authority to hire and discharge the office help. He also hired many of the employees who worked in the woods. His suggestions or recommendations with reference to changes of status of other employees was given particular weight. He purchased the office supplies and regularly and customarily made trips to the bank and to the courthouse for the transaction of the company's business. He kept the records of the company and signed the pay checks, including his own. In all matters pertaining to his position he exercised his own judgment and discretion. Although he did some work of the same nature as that done by nonexempt employees, his hours of work of that character did not exceed twenty per cent of the number of hours worked by nonexempt employees under his direction.

Appellant had no fixed hours of work, but came and went as he pleased. He usually reported at the office at about seven-thirty o'clock in the morning, took an hour or two at noon for lunch, and left early in the afternoon. Being an enthusiastic golfer, he frequently spent his afternoons, or a part of them, during the week, on the golf course. Occasionally, he made trips to Centralia to look after the business of a drug store which he owned. The time spent by him in or out of the office was fixed by himself.

Appellant was also the postmaster at Melbourne, receiving a salary of four hundred dollars a year from the United States government. In addition, he represented an insurance company and wrote policies for the officers and employees of the respondent.

We have not attempted to set forth in detail the evidence with respect to appellant's various activities, nor is it neces-

sary to do so. Suffice it to say that we are convinced from the record that appellant occupied the status of an "employee employed in an executive capacity," as that term is defined in the regulations of the administrator as quoted above. We therefore hold that, upon the evidence, considered in the light of the rules applicable thereto, the finding of the trial court on that issue is correct. Support for this conclusion is found in *Owin v. Liquid Carbonic Corp.* (D. C. Tex.), 42 F. Supp. 774, and *Rosenthal v. Atkinson* (D. C. Tex.), 43 F. Supp. 96.

The third question presented to the trial court was whether or not appellant had proved that he did work overtime. Despite the fact that our decision upon the preceding question would be sufficient to dispose of this case, we are constrained to decide this third question also, because of the strenuous argument made thereon by respective counsel.

On this issue, the burden of proof was upon the appellant, for it was his duty to establish by a preponderance of the evidence not only the fact of overtime work, but also the quantity of overtime services performed by him each week. *Lowrimoore v. Union Bag & Paper Corp.* (D. C. Ga.), 30 F. Supp. 647; *Wilkinson v. Noland Co.* (D. C. Va.), 40 F. Supp. 1009; *Mortenson v. Western Light & Telephone Co.* (D. C. Iowa), 42 F. Supp. 319; *Corbett v. Schlumberger Well Surveying Corp.* (D. C. Tex.), 43 F. Supp. 605; *Niehaus v. Joseph Greenspon's Son Pipe Corp.*, 164 S. W. (2d) (Mo. App.) 180; *Ralston v. Karp Metal Products Co.*, 179 Misc. 282, 38 N. Y. S. (2d) 764.

Appellant bases his claim for recovery upon the hypothesis that he worked regularly from 7 a. m. to 5 p. m., except for one hour for lunch, during five days of each week, and from 7 a. m. to noon on Saturdays, and, in addition, worked certain nights, both at the office and at home. From the testimony to which reference has already been made, it is apparent that there was a sharp conflict in the evidence as to the actual amount of time spent by the appellant, during the daytime, at respondent's office or in connection with its business. It is also clear from the evi-

dence that, except for a few weeks, appellant kept no record whatever of the time worked by him during the period here involved, and that no claim for overtime was ever made by him until after he had severed his connection with the respondent. His claim for the overtime expended at night is not only subject to the same criticism, but also lacked the proof necessary to show that he was ordered or permitted to perform any work outside the regular work hours, or that respondent had any knowledge of the fact that appellant was working at night, either at the office or at his home.

"If one has not hired another expressly, nor suffered or permitted him to work under circumstances where an obligation to pay him will be implied, they are not employer and employee under the Act." *Bowman v. Pace Co.,* 119 F. (2d) 858.

To the same effect are *Mortenson v. Western Light & Telephone Co., supra; Stein v. Gordon Bros. Mfg. Co.* (D. C. Mo.), 43 F. Supp. 249; *Dollar v. Caddo River Lbr. Co.* (D. C. Ark.), 43 F. Supp. 822.

The trial court found against the appellant on the question of claimed overtime. Where the testimony is conflicting, the findings of that court will not be disturbed unless we are satisfied that the evidence preponderates against them. *Gensman v. West Coast Power Co.,* 3 Wn. (2d) 404, 101 P. (2d) 316. Careful consideration of the record convinces us that the evidence does not preponderate against the court's finding upon this issue, but rather that it preponderates in favor of such finding.

There is yet another ground upon which our opinion herein may be rested. The pleadings and the briefs present the question of estoppel against the appellant to assert his claim. The record discloses that at the end of each month statements were prepared showing, with respect to each employee, including the appellant, the time worked, the rate of pay, and the balance owing to such employee. These statements were submitted regularly to the appellant, and on the basis thereof he himself signed and issued the pay roll checks. At no time while in the respondent's employ

did appellant challenge the accuracy of these statements or the correctness of the salary checks, in so far as he was concerned. He thus, in effect, represented to the respondent that the statements and checks were accurate and satisfactory, and that he had not worked overtime. By his belated claim he endeavors not only to recover wages for overtime work, at time and a half pay, but also to subject the respondent to the rigorous penalty of the Federal act, resulting in a double recovery besides a large attorney's fee and costs. Had appellant made a claim promptly, respondent would not only have been enabled to rectify the alleged practice with reference to overtime employment, but could also have saved itself from incurring the heavy penalty which appellant now seeks to recover for himself. In our opinion, appellant should be estopped to assert the alleged claim. *Mortenson v. Western Light & Telephone Co., supra.*

For each and all of the reasons given above, the judgment is affirmed.

SIMPSON, C. J., BEALS, MILLARD, ROBINSON, and MALLERY, JJ., concur.

GRADY, J. (dissenting)—I am unable to concur in the conclusion of the majority either as to a part of the factual situation presented or that the entire claim of the appellant should be disallowed. In order to present fully my views as to the facts and the application of the law thereto, I find it necessary, in a measure, to cover some of the same ground as set forth in the majority opinion.

This action was brought by M. L. Cotton against the Weyerhaeuser Timber Company under the fair labor standards act of 1938 (52 Stat. 1060, 29 U. S. C. A., §§ 201-219), which became effective October 24th, for alleged overtime services performed for the defendant during the years 1938, 1939, and 1940. A trial before the court resulted in a judgment dismissing the action, from which dismissal plaintiff appeals.

The theory of appellant is that he was employed by the respondent as bookkeeper and clerk in its office at Mel-

bourne; that respondent was engaged in the business of cutting, logging, and manufacturing its timber for commerce; that he had rendered services to respondent beyond and outside the hours prescribed by law for the doing of the work· for which he was regularly employed; and that, by virtue of the act, he became entitled to extra compensation beyond his agreed salary.

The respondent, in its answer, denied generally the material allegations of the complaint and pleaded affirmatively that its Melbourne activities were intrastate; that the appellant is estopped from claiming overtime compensation for the reason that he did not at any time report or make known to respondent that he was working overtime, and any overtime work he did was without its knowledge or consent; also, that appellant was employed by respondent in the capacity of office manager until August 1, 1940, and thereafter as bookkeeper, and that, from the taking effect of the act until August 1, 1940, his duties were in a bona fide executive capacity; that he was employed at a fixed and stated monthly salary, and not on an hourly wage, hence he was not affected by the act.

The affirmative matter of the answer, in so far as it affected his right of recovery, was denied by appellant in his amended reply.

The trial court made and entered findings of fact to the effect that, at all times involved, appellant was employed and engaged in the production of goods for interstate commerce, or in an occupation necessary to such production, and his employment was in a bona fide executive capacity; that his employment was at a monthly salary which exceeded the minimum wage prescribed by the act, and it was paid currently as it accrued, and appellant was therefore exempt from the provisions of the act; also, that he failed to prove by a preponderance of the evidence that he had been employed for any work week in excess of that specified in subd. (a) of § 7, p. 1063, of the act (29 U. S. C. A., § 207 (a)), and that the evidence did not establish that he had been so employed.

The applicable sections of the act to this case are 3, 7, 13, and 16 (29 U. S. C. A., §§ 203, 207, 213, and 216), and read as follows:

"§ 203 [29 U. S. C. A.] Definitions
" (e) 'Employee' includes any individual employed by an employer.
" (g) 'Employ' includes to suffer or permit to work."

"§ 207. Maximum Hours
"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—
" (1) for a workweek longer than forty-four hours during the first year from the effective date of this section,
" (2) for a workweek longer than forty-two hours during the second year from such date, or
" (3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

"§ 213. Exemptions
" (a) The provisions of sections . . . 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive . . . capacity . . . (as such terms are defined and delimited by regulations of the Administrator); . . ."

"§ 216. Penalties; civil and criminal liability
" (b) Any employer who violates the provisions of section . . . 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

In October, 1938, the administrator issued regulations defining and delimiting an employee employed in a bona fide executive capacity as used in § 13 (a) (1) of the act (29 U. S. C. A., § 213 (a) (1)), as follows:

"Section 541. 1. Executive. The term 'employee employed in a bona fide executive . . . capacity' in Section 13 (a) (1) of the Act shall mean any employee

"(1) whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed,

"(2) who customarily and regularly directs the work of other employees therein, and

"(3) who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(4) who customarily and regularly exercises discretionary powers, and

"(5) who does no substantial amount of work of the same nature as that performed by non-exempt employees of the employer, and

"(6) who is compensated for his services at not less than $30.00 (exclusive of board, lodging, or other facilities) for a workweek."

In order to maintain an action under the act, it is necessary that it be made to appear that the employer, during the period for which overtime compensation is claimed, was engaged in commerce, or in the production of goods for commerce, of an interstate character. The trial court found that respondent was so engaged, and its finding in this respect is amply borne out by the evidence.

The pivotal question to be determined is whether appellant, during the time involved here, was employed by respondent as bookkeeper and clerk, or was employed in a bona fide executive capacity as defined and delimited by the regulations of the administrator of the wage and hour division provided for in the act, because, if appellant was employed in the former capacity and worked overtime, within the purview of the act, he would be entitled to recover; but, if he was employed in the latter capacity, he would not be entitled to recover for overtime.

In determining the status of a person in connection with his relationship to another, the work done by him must be the guide rather than what he may have been called or designated, or what title he may have had or assumed. Both parties, in their briefs, concede this principle, and I shall use it in a determination of the status of appellant.

The nature and character of the services performed and the acts and things done by appellant while he was in the employ of respondent are, in the main, not in serious dispute when we eliminate opinions given and conclusions drawn by some of the witnesses in response to questions. Under such circumstances, this court, as a trier of fact *de novo*, will not give the same weight to the findings of the trial court as it would if such findings were made upon conflicting statements of witnesses and where their veracity and the weight to be given their testimony were the determinative factors.

The respondent maintained what may be called its main office at Tacoma, with a branch office at Melbourne, in Grays Harbor county, a few miles from Montesano. Appellant had been in its employ ever since it conducted its business operations there. F. W. Byles was employed in the capacity of what was termed the general manager of this part of respondent's business, and appellant was designated by respondent as office manager. Mr. Byles was not in good health, and he was absent from the office a substantial part of the time. Orders and instructions were given to appellant and to a Mr. Johnson, who assisted him, by Byles. Many orders and instructions were given by telephone and by letters from the Tacoma office.

The appellant did bookkeeping, other than the payroll and cost accounting, and general clerical work, acted as stenographer for Mr. Byles, received telephone calls for shipments to go out on the morning train, checked over the time sheets after they had been made out by others to determine their accuracy, compiled data for income tax and other reports, including log raft scaling and refund on fuel oil, wrote letters, received and sorted the mail for the office and the logging camp and delivered it to the manager's desk, and purchased the office supplies.

On appellant's recommendation, Johnson was hired, and, after his dismissal by the manager, he was reinstated. I infer that appellant either hired the other clerks or they were placed upon his recommendation. The method of em-

ploying labor at the logging camp was to interview the men sent to the office by an employment agency, and, if found satisfactory, to send them to the camp. No particular person in the office had this exclusive duty. Whoever the laborer contacted at the employment window attended to his application. It does not seem that appellant ever discharged any of the loggers, nor is there any evidence as to how many of the office employees severed their connections with the respondent. The only direct evidence of anyone being dismissed was in regard to Johnson, discharged by Byles, the appellant having had nothing to do with the matter. Questions propounded in substantially the language of the regulations as to hiring and firing were answered by witnesses in the affirmative, but were their conclusions or opinions rather than factual testimony.

My examination of the record leads me to conclude that, while some of the duties required by respondent and performed by appellant fall within one or more of the subdivisions of the definition of "employee employed in a bona fide executive . . . capacity," the greater number by far do not. Owing to frequent absences on account of illness, many of the general manager's duties necessarily had to be performed by appellant. But I do not think it can be said that his primary duties and those which he had been employed to perform went beyond those usually performed by a chief or a head clerk in any establishment with an office force. His duties as bookkeeper, compiler of reports, and of a clerical and office-employee character far outweighed those having any executive aspect. He did oversee and direct the work of other employees in the office. Many of their duties, however, were along the same lines as those he performed, and, necessarily, where there are several working together in an office, there must be someone who has the final word as to how the work shall be done in order to secure the greatest efficiency.

The situation of appellant fairly brought him within the purview of subd. (3) of § 541.1 of the definition of one in an executive capacity. As to whether he customarily and

regularly exercised discretionary powers other than those necessarily incidental to the bookkeeping and the clerical duties that he performed, there is much doubt. His testimony that he did not exercise discretion was in the nature of an opinion or a conclusion, and the testimony of respondent's witnesses to the effect that he did so, was also of a like character, and neither can be given any weight.

The word "discretion" has somewhat of a varied meaning, but, as used here, it means the power of free decision, individual judgment, undirected choice. When we think of one vested with discretionary powers, we usually have in mind one who acts primarily and principally in a directive capacity, and not one who primarily does the actual work. This thought is intensified when we consider subd. (5) of § 541.1, which applies to one "who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer."

As stated before, the substantial amount of work done by appellant from day to day was of the same nature as that done by other employees in the office. The different subdivisions or elements making up the definition of one in an executive capacity are in the conjunctive, which necessarily implies that one must come within all of them to be termed an executive. We are dealing with an exemption from the statute providing for extra pay for overtime work, and it is my opinion that, before the exemption can apply, it must clearly appear that the employee falls within each and all of the different elements making up the exemption. There will, of course, be border line cases where it will be extremely difficult to say whether or not an employee is within the exempt class; hence, each case must rest largely upon its own factual situation.

Viewing the facts as disclosed by the record in this case, I reach the conclusion that appellant is not within the exemption, and was not employed in a bona fide executive capacity.

In submitting his proof on the amount of overtime, appellant claimed that his hours of employment during the

time in question were from seven in the morning to five in the afternoon, with one hour out at noon, with the exception of Saturday, when work ceased at twelve o'clock noon, and that he also worked overtime evenings at either his home or the office.

There is some dispute in the testimony as to whether appellant was ever instructed or required to commence work as early as seven o'clock in the morning. But I think his testimony on that point is corroborated by the fact that, during the time in question, and for a long time prior thereto, he did, in fact, commence work at that time, and that this was necessitated by the fact that appellant was expected to, and did, receive orders from the Tacoma office to ship various articles on the morning train, which left at or before that time. It may be fairly inferred, I think, that respondent either affirmatively directed appellant to commence work at that time in the morning, or it at all times had full knowledge that he was doing so, and acquiesced. The respondent submitted proof that appellant performed outside work, such as attending to the United States postoffice and writing insurance, and that he also was frequently absent from his employment on business or pleasure of his own, such as playing golf.

I conclude that appellant is entitled to compensation for the overtime above the maximum hours prescribed by the act, but I do not think he is entitled to recover for any overtime that he may have worked beyond the nine-hour-day office hours.

The act contemplates that the overtime work be such as the employer suffers or permits to be done, and this presupposes that the employer has knowledge, either actual or constructive, that it is being done. The reason for this is that an employer should have the opportunity to decide whether he chooses to pay the regular employee the overtime compensation provided for in the act or secure another employee to perform the necessary extra work.

The appellant did not apprise respondent that he was doing overtime work at his home or at the office after regular office hours, and the evidence does not show that

it had constructive knowledge of it. There is evidence to the effect that some of the clerical work required of appellant needed haste in its performance, but this fact does not indicate that respondent either knew or should have contemplated that he would have to work beyond regular office hours in order to do the work as promptly as expected.

I think the circumstances under which appellant performed the overtime work claimed beyond the nine-hour office day not only shows that it was not such work as was suffered or permitted by respondent, but also that appellant is estopped from claiming compensation for such overtime by reason of his conduct in failing to bring home to respondent a knowledge that it was being performed. *Mortenson v. Western Light & Telephone Co.,* 42 F. Supp. 319; *Schroepfer v. A. S. Abell Co.,* 48 F. Supp. 88.

The appellant should have deducted from his claim for overtime beyond the maximum hours prescribed by the act such time as he spent attending the post office and his own business affairs, writing insurance, and in playing golf. Upon the theories under which the case was tried and defended, the various items referred to were not segregated. In some instances, the evidence is quite indefinite, or there is none at all, so that it is not possible for this court to arrive at the correct number of hours of overtime for which appellant should be compensated, and the case should be remanded to the lower court for further proceedings.

The act speaks in terms of hours, so, where an employee is working on a monthly salary basis, such salary must be translated into its equivalent weekly wage by multiplying by twelve (the number of months) and dividing the result by fifty-two (the number of weeks). Section 7 (a) (3) of the act (29 U. S. C. A. § 207 (a) (3)) provides that no employer shall employ any employee for a work week longer than forty hours after the expiration of the second year from such date, "unless such employee receives compensation for his employment in excess of the hours above speci-

fied at a rate not less than *one and one-half times the regular rate* at which he is employed." (Italics mine.) The "regular rate" is the quotient of the amount of wage or salary a week agreed to be paid divided by the number of hours worked in any particular week. *Dimmitt v. Great Southern Life Ins. Co.,* 124 F. (2d) 40; *Overnight Motor Transp. Co. v. Missel,* 316 U. S. 572, 86 L. Ed. 1682, 62 S. Ct. 1216.

By § 16 of the act (29 U. S. C. A., § 216), any amount of compensation found due for overtime work must have added to it an equal amount as liquidated damages, and a plaintiff is entitled, in addition, to have the award of a reasonable attorney's fee and his costs of the action. The provisions of this section of the act are mandatory. *Abroe v. Lindsay Bros. Co.,* 211 Minn. 136, 300 N. W. 457; *Williams v. General Mills,* 39 F. Supp. 849; *Schneider v. Sports Vogue,* 35 N. Y. S. (2d) 341, and cases cited.

The appellant claims he is entitled to interest on the weekly sums of overtime compensation, but that depends upon whether, for any week for which overtime is claimed, the number of hours of overtime has to be determined by evidence. If so, then interest cannot be allowed prior to judgment. But if it appears that the number of hours of overtime in any week can be determined by mere mathematical calculation, then interest is recoverable from the time the demand accrued. *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837.

The judgment should be reversed and the case remanded to the trial court, with instructions to determine the amount owing to appellant, and he should be awarded an attorney's fee in the sum of two hundred fifty dollars for the prosecution of his appeal.

JEFFERS and BLAKE, JJ., concur with GRADY, J.