PIONEER CORPORATION v. KIMSEY.

No. 31928. Oct. 23, 1945.

162 P. 2d 1000.

Valjean Biddison and Floyd L. Rheam, both of Tulsa, for plaintiff in error.

T. L. Blakemore, of Sapulpa, for defendant in error.

BAYLESS, J. Pioneer Corporation, a corporation, appeals from a judgment of the district court of Creek county, based on the verdict of a jury, in favor of W. L. Kimsey. Kimsey brought the action against Pioneer, his former employer, to recover for overtime work, liquidated damages, and attorney's fee under the Fair Labor Standards Act of 1938, 52 Stat. 1060-1069, 29 U. S. C. A. 201-219.

Pioneer presents two propositions, (a) an employee who seeks to recover under said act has the burden of proof to show (1) that he actually worked overtime, and (2) that his employer had knowledge thereof, and (b) an employee who keeps his own time sheets and does not advise his employer of the fact that he is working overtime, but conceals such fact from the employer, is estopped from claiming overtime. Kimsey urges that these propositions present basically questions of fact only, and we agree with him. We do not understand from his brief that he controverts the correctness of the law of

estoppel announced by the decisions cited by Pioneer, but contends that the facts do not justify the application of that rule in this case.

Pioneer argues that Kimsey has not sustained the burden of proof on either aspect of the first proposition. Kimsey argues that he has. Each of the parties cites parts of the record in support of these opposing arguments, and from this and our search of the record, we are of the opinion that the evidence is highly conflicting. It is an especially appropriate matter to leave to the jury. We say this in full recognition of the burden of proof that rests upon Kimsey under the decisions of the courts, including our own decisions as recent as Mabee Oil Co. v. Thomas, 195 Okla. 427, 158 P. 2d 713.

Kimsey testified generally and in detail, both on direct examination and throughout a searching cross-examination, that he worked a steady shift from 7 o'clock a.m. to 5 o'clock p. m., and thereafter and as late as 10 o'clock p. m. performed services necessary to the maintenance of the operation of the lease on which he was a pumper. Pioneer, relying upon the provisions of an interpretative bulletin issued by the Office of the Administrator of the Wage and Hour Division relating to the calculation of hours and wages for employees engaged in active work for part time of the day only but the nature of whose work required their presence 24 hours per day, indulged in a cross-examination designed to elicit from Kimsey the exact nature and scope of his various duties, the amount of time required therefor, and the amount of time which he was free to spend and did spend away from the lease or for his own purposes when on the lease. At one time Kimsey was looking after two leases with the assistance of a helper, but later, at Kimsey's request, not involving a complaint of overtime, this arrangement was discontinued and Kimsey directed all of his time to one lease. At the beginning of his employment Kimsey worked seven days per week, but later he worked six days per week, being relieved by a substitute. The testimony of the substitute pumper and of the pumper who later succeeded to his duties is that it takes eight to nine hours a day to pump this lease. The testimony of the lease foreman for Pioneer was that this lease could be pumped in six and three-quarters hours per day. Using these figures Kimsey calls attention to the fact that under any calculation based on seven days per week, which he worked at one time, he put in overtime, and on the basis of six days per week he put in overtime even on the six and three-quarter-hour basis testified to by the lease foreman. The worst aspect of Kimsey's case arises from the fact that he kept his own time record, specifying the hours of beginning and quitting during the day, and made these records conform to the 44 and 42-hour limitations involved and certified thereon that the report represented the actual time worked by him, thereby, in effect, certifying that he did not work any overtime. To offset this he calls attention to the fact that when he began this work the representative of Pioneer instructed him how to make out his time sheets and expressly directed him not to turn in more time than the maximum hours allowed without overtime under the prevailing law and regulations, but coupled this with the statement that he knew that some of the pumpers could not pump their leases within that time. Kimsey was contradicted as to the latter part of this statement. Kimsey testified that he took this to be an implied direction to work whatever hours were necessary to keep the lease in production without reporting overtime or ceasing the employment. Kimsey also testified that the lease foreman was present on the lease almost every day and knew that he was working after five o'clock. He testified that he asked the foreman what he should do if the engine broke down or pumping ceased for any reason "after dark," and that the foreman told him to let her lay until the next day. The fore-

man contradicts him on this point by saying that Kimsey asked him the question but did not say "after dark' but instead said "after five o'clock." Pioneer also introduced evidence to the effect that it sent letters to its field representatives to be read to the various employees informing them with respect to the prevailing regulations on hours and directing them not to work overtime, and from this argue that Kimsey and all other employees knew they were not to work overtime. We have examined Pioneer's exhibit No. 1, which is a letter dated October 16, 1939, which its witness testified he read to Kimsey and which Kimsey denied. In this letter the schedule is set out for regular pumpers and therein the statement is made "shall, beginning October 24, 1939, work no more than 42 hours per week." However, the concluding paragraph of the letter reads as follows:

"In view of the above change in working schedules, you will have to revise your record of time keeping in order that there will be the least amount of overtime hours performed. Any man working over 42 hours per week for the Pioneer Corporation will have to be paid at the rate of time-and-half which is the same condition that existed before the revision was made and it is our desire to hold our pay roll to the minimum amount allowing overtime work only under emergency conditions."

We believe the foregoing paragraph sufficiently sets out the state of the evidence in the record with respect to the various points attempted to be made by the parties and that it supports our previously announced conclusion that such a state of facts not only is highly conflicting but is sufficient to support a verdict of the jury in favor of either party on the issue of whether Kimsey worked overtime and whether his employer had knowledge thereof. Our decision in Mabee Oil Co. v. Thomas, supra, and the decision of the Supreme Court of Kansas, Jackson v. Derby Oil Co., 157 Kan. 53, 139 P. 2d 146, and the other decisions cited by Pioneer have been considered in reaching the conclusion on this point.

Based upon Mortenson v. Western Light & Telephone Co., 42 Fed. Supp. 319, supra; Jackson v. Derby Oil Co., supra; Gale v. Fruehauf Trailer Co., 158 Kan. 30, 145 P. 2d 125 (this man reported some overtime but not all of it); and Cotton v. Weyerhaeuser Timber Co., 20 Wash. 2d 300, 157 P. 2d 299 (there was a question whether this man came under the act, but the facts and estoppel were both found against him), Pioneer argues that because Kimsey kept his own records, and reported no overtime and concealed from them the fact that he was working overtime, he is estopped to make the claim in this action. We think the recitation of the evidence in this case heretofore made sufficiently covers the facts relating to this issue and there is no occasion to reiterate them. As we read the cases cited by Pioneer the trial courts found in each of those instances the active element of secrecy or concealment that is not present in this case. We think the facts above recited relating to the commencement of the employment and the instructions he received, plus the almost daily presence on the lease of the lease foreman, plus the experience of the other employees who performed the same duties, would justify the jury in believing and finding that there was no secrecy or concealment in this case within the purview of the decisions above cited.

Judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, WELCH, CORN, DAVISON, and ARNOLD, JJ., concur.