## KACZANOWSKI v. HOME STATE BANK.
### Civ. A. No. 4445.

District Court, E. D. Wisconsin.
May 6, 1948.

Max Raskin, of Milwaukee, Wis., for plaintiff.

Kaumheimer, Alt & Likert, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for alleged unpaid overtime compensation for the period from August 1, 1941, to January 6, 1946, plus liquidated

damages and attorney fees. She first entered defendant's employ in 1926. For ten years her duties consisted of stenographic work, typing, some bookkeeping and management of the safety deposit vault. She was made assistant cashier in 1936. Thereafter, in addition to other work, she handled insurance loans and the travel department. After 1938 she was also responsible for compliance by the bank with the Fair Labor Standards Act. On May 8, 1941, defendant hired a full-time stenographer, and plaintiff was relieved of her stenographic duties, although for convenience she at times used the typewriter in carrying out some of her duties.

In handling life insurance loans plaintiff drafted assignment papers and notes, checked the validity of assignment of policies, paid off policy loans, and made other contacts with the various insurance companies. During the period here in question defendant made 653 loans; of these plaintiff was the principal authority on 283 loans, or more than 43%. In addition plaintiff was co-ordinating authority with the defendant's vice president on 7.8% of the loans.

The president of the bank was not active and its management was in the hands of Harry Z. Logan, vice president, Louis Saksefski, cashier, and plaintiff, as assistant cashier. These three constituted the management committee. All decisions of importance were made by this committee, subject to appeal to the Board of Directors. One of the duties of the management committee was to prepare the annual budget, including the determination of salaries of all employees other than their own. This committee also passed on loans, the purchase of equipment, and managed the general operations of the bank. In the absence of the vice president and cashier, plaintiff was in charge of the bank.

The turn over in personnel of defendant, a small bank, has been very limited; in fact during the period in question only one employee was discharged, and this was upon the recommendation of plaintiff. Two employees were hired for the bank by plaintiff.

As part of her supervisory duties, plaintiff issued 64 out of a total of 132 bank memoranda directed to employees, pertaining to prescribed methods and practices within the bank. Among plaintiff's additional duties and responsibilities were: serving as secretary of the loan committee of the Board of Directors, establishing the Blue Cross Hospital plan for defendant's employees, arranging for indemnity bonds in case of lost instruments, having access at all times to the vaults and money safe and to the bank's confidential files and records, and having available the confidential salary figures for each officer and employee, signing drafts and certified checks, executing legal documents on behalf of the bank, being in charge of the deposit signature cards, placing orders for the purchase and sale of customer's securities, supervising much of the work of the employees who reported to her any difficulties with reference to bills receivable register and ledger, collateral register, and cash items, supervising employees in handling signature cards and Christmas Club accounts, handling the transfer of shares of the bank's stock when necessary, determining the amount of dividends due to each shareholder and preparing the dividend checks, and being responsible for the preparation of federal and State salary and dividend reports.

On Mondays through Fridays plaintiff customarily did some work each day in a teller's cage. When she arrived at work on such mornings she would go to Cage 1 and put the coin and currency placed there by the cashier in the coin machine and drawer respectively. This took only a few minutes. The remainder of the morning was devoted to other business, principally loan work. Customarily plaintiff took her lunch period from 11:00 A.M. to 12:00 M. The busiest rush of the day's work at the bank is between noon and 1:00 P.M. Upon entering the bank a customer faces Cages 2, 3, and 4. Cage 1, which plaintiff occupied, was off to the left. The volume of work in Cage 1 was less than that of the others. During the noon period when plaintiff occupied Cage 1, she frequently conducted insurance, mortgage loans and other business. She received numerous telephone calls which required her to leave the cage and go to her desk in the front office located about thirty feet from Cage 1. Plaintiff received

more business telephone calls than any other employee in the bank. Including the many interruptions the plaintiff customarily worked in the teller's cage for an hour to an hour and a half on each day except Saturday. After the bank closed at 2:00 P.M. on about 50% of the days plaintiff "balanced" the cage. This ordinarily took ten or fifteen minutes, but sometimes as long as half an hour. Occasionally, plaintiff did some teller work on Saturdays.

In August, 1941, plaintiff's salary was $130.00 per month; in 1942 it was increased to $150.00 and then $160.00; in 1943 it was increased to $185.00; after March 11, 1944, it was increased to $200.00; in 1945 to $225.00; and in 1946 to $250.00. Although plaintiff had no schooling beyond a high school education, she was a woman of unusual business ability and willingly accepted and competently performed the responsibilities assigned to her.

Defendant pleaded and strongly urges that plaintiff is estopped to deny she acted in an administrative or executive capacity. Plaintiff took a leave of absence in May and June, 1944, during which period defendant paid her salary in full. She was absent because of illness for the entire year of 1946, and defendant likewise paid her salary in full for that period. Although she worked only part-time during the first half of 1947, and was discharged on July 8 of that year, defendant again paid her salary in full for the entire year of 1947.

From 1940 to July 8, 1947, the defendant bank did not keep a record of plaintiff's overtime and plaintiff knew it. During such period plaintiff never suggested or asked that a record of her overtime be kept, nor indicated in any manner that she regarded herself as an employee entitled to the benefits of the act. About March 24, 1942, a Miss Nellen, representing the Wage and Hour Division of the War Labor Board, called at the bank to inspect its records. Plaintiff informed Miss Nellen that she was an executive employee and exempt from the provisions of the Fair Labor Standards Act. Following the visit of Miss Nellen, a report dated March 26, 1942, was sent by defendant to the Wage and Hour Division and, at the suggestion of the plaintiff, the following statement was included:

"* * * We believe we have fully complied with the Wages and Hour Act * * *." Furthermore, applications for salary increases during the war for plaintiff, as well as for the cashier and vice president, were made to the Wage Stabilization Unit of the Treasury Department, whereas applications for increases for all other employees were made to the War Labor Board. Such requests for increases in the salary of the other employees were prepared by the plaintiff and forwarded by her to the War Labor Board. Plaintiff knew and did not object that all of the applications for her salary increases were submitted to the Treasury Department upon the representation that she was an executive of the defendant bank.

Indeed many elements of estoppel are present. Full compliance by the bank with the provisions of the Fair Labor Standards Act was a responsibility of the plaintiff. She represented herself to the Wage and Hour Division of the Department of Labor and to the Treasury Department as being in an executive capacity; the other bank officers so regarded her. The bank was prejudiced by such representations. No record was kept of her overtime. Had she been claiming overtime compensation, it is entirely unlikely the bank would have paid her full salary during the period she was absent for two months in 1944, the entire year of 1946, and for more than half of the year 1947. If plaintiff had any idea of making a claim for overtime compensation, she kept it a dark secret until after she was paid for more than one and a half years of service which she did not render.

Plaintiff contends that the doctrine of estoppel cannot be applied in an action at law for rights created by statute. While estoppel in pais is equitable in nature and is governed by equitable principles, it may be set up as a defense in an ordinary action at law. 31 C.J.S., Estoppel, § 64, p. 252. However, this is not an ordinary action at law. Prior to the passage of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., it was held that an employee cannot by a contract or agreement waive his right to liquidated damages. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296. It was also held that an

employee's compromise of controversies over coverage by the act will not be upheld. D. A. Schulte, Inc., v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208. Although some courts have applied the doctrine of estoppel in wage and hour cases (Dollar v. Caddo River Lumber Co., D.C., 43 F.Supp. 822; George Lawley and Son Corporation v. South, 1 Cir., 140 F.2d 439, 443, 151 A.L.R. 1081; Cotton v. Weyerhaeuser Timber Co., 20 Wash.2d 300, 147 P.2d 299), in view of my conclusion that plaintiff is exempt under the act, it is not necessary to rest the decision herein on estoppel.

Turning instead to the issue of whether plaintiff was employed in a bona fide executive capacity within the meaning of Sec. 13(a)(1) of the act, and Part 541.1 of the Regulations of the Administrator of the Wage and Hour Division, 29 U.S.C.A. Appendix, comment should be made that plaintiff endeavored on the witness stand to minimize her responsibilities and duties, and designated them as mere routine. However, it is impossible to conclude that plaintiff was the prime authority in making 283 loans totaling nearly $1,000,000.00 without exercising discretion and independent judgment. Her work in drafting notes and mortgages, checking descriptions on surveys and mortgages, checking coverage on insurance policies, drafting assignments and releases in connection with mortgage and life insurance loans, making examinations of life insurance policies to determine the rights and validities of assignments, and other such activities were a far cry from routine clerical work.

■ Six conditions are enumerated in the conjunctive in the administrator's regulations limiting the meaning of the term "employee employed in a bona fide executive capacity," all of which must be satisfied in order to establish an exemption, and the failure to establish any one of them requiring denial of the exemption. Schmidt v. Emigrant Industrial Sav. Bank., 2 Cir., 148 F.2d 294, 295; Smith v. Porter, 8 Cir., 143 F.2d 292, 294; Helliwell v. Haberman, 2 Cir., 140 F.2d 833, 834. The burden of proof is upon the defendant to show that the plaintiff is an executive within the definition set forth in the administrator's regulation. Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337, 341.

■ In the case at bar I think there is no doubt that defendant has proved conditions (a), (b), (c), (d), and (e) of the regulation describe plaintiff's employment. Plaintiff did have the management of a customarily recognized department of the bank; she directed the work of other employees; her recommendations as to hiring and firing employees were given particular weight; she customarily and regularly exercised discretionary powers; and she was compensated on a salary basis of not less than $30.00 per week. The only condition which requires a weighing of the testimony to see whether it was met is (f)—whether plaintiff's hours of work of the same nature as that performed by non-exempt employees exceeded 20% of the number of hours worked in the work week by the non-exempt employees under her direction. Time consumed on services rendered by the plaintiff which were merely incidental to the performance of her supervisory duties should not be computed within the 20%. Dolan v. Day and Zimmerman, Inc., 1 Cir., 65 F. Supp. 923, 931, 937. If we were to consider the entire period from the time plaintiff first went into the cage until she concluded her work, therein, plus any other non-exempt work, it is probable that the 20% would be exceeded. However, the frequent interruptions which took the plaintiff out of the teller's cage in order to carry on her supervisory work makes the total hours worked in a non-executive capacity considerable less than 20% mentioned in the regulation. I conclude that the defendant has established to a reasonable certainty by a preponderance of the evidence that plaintiff was exempt from the provisions of the act as an employee employed in a bona fide executive capacity.

■ In the event an appellate court disagrees with my conclusions as hereinabove stated, I desire to record my opinion that in any event plaintiff was employed after March 11, 1944, in an administrative capacity within the administrator's definition and under the authority of cases construing such exemptions. I am further of the opinion that liquidated damages should

not be awarded in any event as, due to plaintiff's conduct, the bank acted in good faith and had reasonable grounds to believe it was not violating the Fair Labor Standards Act in not paying overtime compensation to plaintiff.

Judgment may go for the defendant.