# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JUDE I. DOTY, | ) |
| | ) No. 72021-0-I |
| Appellant, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) |
| DEPARTMENT OF LABOR AND | ) UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) |
| WASHINGTON and JUDY SCHURKE, | ) |
| in her capacity as Deputy Director, | ) |
| | ) FILED: February 17, 2015 |
| Respondent. | ) |
| | ) |

LEACH, J. — Jude Doty appeals the superior court order affirming an order of the director of the Department of Labor and Industries (Department). The director's order upheld citations the Department issued to Doty for violating child labor laws by employing his sons, ages 11 and 13, in Doty's construction business. Because the Department did not exceed its rule-making authority when it defined the word "employ," substantial evidence supports the director's findings, and those findings support the conclusions that Doty employed his sons and committed serious violations of child labor laws, we affirm.

## FACTS

Jude Doty owned and operated a construction and house-moving business in which he employed workers. Doty and his wife homeschool their

children, and as part of "vocational training," Doty involved his sons Zachary, 13, and Stephen, 11, in the business. For one project, he moved several houses from a hospital property to different sites in the city of Yakima. Zachary worked on the project from April 2002 through January 2003, and Stephen from November 2002 through January 2003.

Both Zachary and Stephen worked at the construction sites, working near and operating heavy equipment such as backhoes, bulldozers, and tractors. At times, Doty was not nearby supervising their use of the heavy equipment. The boys performed many construction-related tasks, including jobs also performed by adult subcontractors. This work benefited the business.

More than once, Zachary rode on the rooftop of one of the relocated houses as a truck towed it down a public arterial at "approximately walking speed." A videotape shows Zachary moving around on the roof, lifting overhead wires and cables as a "spotter" to ensure the safe passage of the house down the street. The roof of the house was approximately 22 feet above the ground. Zachary did not wear a harness or other safety equipment. According to Doty, he profited from using a spotter on top of the house because he has to pay if he damages wires in transit. Zachary did not fall from the roof or suffer any injury.

At other times, both Zachary and Stephen acted as spotters by walking alongside or in front of a moving house, making sure it did not hit signs, cars, or

other obstacles. On one occasion, a Department investigator observed Zachary jumping on and off the moving truck as he directed his father. The investigator also saw Zachary walking only a few feet from a reversing backhoe.

On January 28, 2003, the Department cited Doty for 11 violations of child labor laws under WAC 296-125. The citations assessed penalties of $6,500[1] and classified 5 of the violations as "serious." The Department also issued an order of immediate restraint, prohibiting Doty from allowing his sons to work at construction sites or in the proximity of heavy equipment.

Over the next two days, Doty continued to have both boys perform construction work. On January 30, 2003, while Zachary operated a backhoe on soft dirt, it tipped onto its side. According to an adult worker at the site, Zachary operated the backhoe too fast for the conditions. He was not wearing a seatbelt or harness. Doty was not nearby supervising him. Zachary crawled out from under this machine, uninjured. Later, Doty had Zachary use a bulldozer to pull the backhoe upright.

On January 31, 2003, the Department cited Doty for 20 additional violations, imposing $20,000 in penalties. The Department classified all 20 violations as "serious-imminent danger-repeat" and issued another order of immediate restraint.

---

[1] After the Department amended the citation to eliminate 6 of the violations, Doty's penalties totaled $5,000.

Doty appealed, and the administrative law judge affirmed. Doty appealed to the director, who affirmed the citations on August 31, 2004. The director found that Doty had employed his sons in his house-moving business in violation of child labor laws and that by permitting them to perform construction-related activities, he exposed them to the risk of serious physical harm or death. Doty appealed to the superior court, which affirmed the director, holding that the Department may define "employ" for purposes of child labor laws and that these laws are constitutional as applied to Doty.

Doty appeals.

## STANDARD OF REVIEW

When reviewing an agency's decision under the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, this court sits in the same position as the superior court[2] and applies the review standards of the WAPA directly to the administrative record.[3] An appellate court reviews the final decision of the director.[4] The party asserting the invalidity of an agency action has the burden to demonstrate that invalidity.[5] This court will grant relief from an agency order only if it determines that the agency erroneously interpreted or

---

[2] D.W. Close Co. v. Dep't of Labor & Indus., 143 Wn. App. 118, 125, 177 P.3d 143 (2008).

[3] RCW 49.12.400; Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[4] RCW 49.12.400.

[5] RCW 34.05.570(1)(a).

applied the law, substantial evidence does not support the order, or the order is arbitrary or capricious.[6] Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted.[7] If this court determines that substantial evidence supports the director's findings, it then decides if those findings support the director's conclusions of law.[8]

This court reviews an agency's interpretation of a statute or regulation de novo, under an error of law standard.[9] In interpreting agency regulations, regulatory definitions apply, and courts give undefined words their ordinary dictionary definitions.[10] This court gives "substantial weight" to the agency's interpretation of regulations within its area of expertise and will uphold that interpretation if "'it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent.'"[11]

---

[6] RCW 34.05.570(2)(d), (e), (i); Xenith Grp., Inc. v. Dep't of Labor & Indus., 167 Wn. App. 389, 393, 269 P.3d 414 (2012).

[7] Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009).

[8] J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus., 139 Wn. App. 35, 42, 156 P.3d 250 (2007).

[9] Roller v. Dep't of Labor & Indus., 128 Wn. App. 922, 926, 117 P.3d 385 (2005).

[10] Asplundh Tree Expert Co. v. Dep't of Labor & Indus., 145 Wn. App. 52, 57, 185 P.3d 646 (2008).

[11] Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus., 122 Wn. App. 402, 409, 97 P.3d 17 (2004) (quoting Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs., 82 Wn. App. 495, 518, 919 P.2d 602 (1996)).

NO. 72021-0-I / 6

## ANALYSIS

### Child Labor in the Industrial Welfare Act

In the industrial welfare act, chapter 49.12 RCW, the Washington legislature declared, "The welfare of the state of Washington demands that all employees be protected from conditions of labor which have a pernicious effect on their health."[12] The act contains provisions governing child labor. It states that the Department "may adopt special rules for the protection of the safety, health, and welfare of minor employees."[13] Courts construe remedial statutes like this one liberally and its exceptions narrowly.[14]

The industrial welfare act defines "employee" as one "who is employed in the business of the employee's employer whether by way of manual labor or otherwise."[15] The statute defines "employer" as "any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and

---

[12] RCW 49.12.010.
[13] RCW 49.12.121(1).
[14] Pellino v. Brink's Inc., 164 Wn. App. 668, 684-85, 267 P.3d 383 (2011) (quoting Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 34, 42 P.3d 1265 (2002) (quoting Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula, 130 Wn.2d 401, 407, 924 P.2d 13 (1996))).
[15] RCW 49.12.005(4).

employs one or more employees."[16]  Statutory provisions and WACs about the employment of minors define "employ" as "to engage, suffer, or permit to work."[17]

Chapter 296-125 WAC prohibits all minors from engaging in many occupations and activities.  These activities include working as an outside helper or flagger on any public road or highway;[18] operating or working in proximity to heavy equipment such as earth-moving machines, backhoes, bulldozers, or tractors;[19] and working more than 10 feet above ground or floor level.[20] Additionally, minors under 16 years old may not work in the construction industry at all unless their work is limited to office duties.[21]

Washington statutes and regulations provide limited exemptions from the child labor laws.  The general definition of "employ" in the WAC excludes certain limited types of work:

> The term "employ" does not include newspaper vendors or carriers, the use of domestic or casual labor in or about private residences, agricultural labor as defined by RCW 50.04.150, or the use of voluntary or donated services performed for an educational, charitable, religious, or nonprofit organization and without expectation or contemplation of compensation for the services performed.[22]

---

[16] RCW 49.12.005(3)(a).
[17] RCW 49.12.320(1); WAC 296-125-015(2).
[18] WAC 296-125-030(2).
[19] WAC 296-125-030(17).
[20] WAC 296-125-030(28).
[21] WAC 296-125-033(4).
[22] WAC 296-125-015(2).

The house-to-house sales provision contains the statute's only express exemption for parent employers.[23]

> WAC 296-125-043 provides an exemption from state minimum wage laws
>
> when a minor student is in a work place to carry out an occupational training experience assignment directly supervised on the premises by a school official or an employer under contract with a school and when no appreciable benefit is rendered to the employer by the presence of the minor student.[24]

To be exempt as occupational training, a minor's work must meet six criteria:

> 4.1. The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school; and
>
> 4.2. The training is for the benefit of the trainee; and
>
> 4.3. The trainees do not displace regular employees, but work under their close observation; and
>
> 4.4. The business that provides the training derives no immediate advantage from the activities of the trainees, and may in fact be impeded; and
>
> 4.5. The trainees are not necessarily entitled to a job at the conclusion of the training period; and
>
> 4.6. The trainees understand they are not entitled to wages for the time spent in the training.[25]

---

[23] RCW 49.12.320(1).

[24] WAC 296-125-043(4).

[25] Wash. Dep't of Labor & Indus., Admin. Policy ES.C2 §§ 4.1-.6, at 6 (rev. Sept. 2, 2008).

## Department's Authority To Define "Employ"

Doty contends that the Department exceeded its authority when it "redefine[d] the meaning of employment." He asserts that the legislature granted the Department only a narrow authority to adopt "special" rules, not broad general authority.

We disagree. The legislature intended that the industrial welfare act protect "all employees" from unhealthy work environments.[26] The "special rules" of RCW 49.12.121(1) are rules for the protection of minor employees in particular. As early as 1914, our Supreme Court recognized that preventing "persons of immature judgment from engaging in hazardous occupations" and preventing "employment and overwork of children during the period of their mental and physical development" were part of the "objects, purposes, and humane spirit of the law."[27] The Department does not exceed its authority by adopting regulations that fall squarely within the legislature's mandate to protect minor workers, and "'properly promulgated, substantive agency regulations have

---

[26] RCW 49.12.010.
[27] Hillestad v. Indus. Ins. Comm'n, 80 Wash. 426, 431, 141 P. 913 (1914).

the force and effect of law.'"[28]  The Department did not exceed its statutory authority by adopting its definition of "employ."[29]

"Employ" as Applied to the Dotys

Because the statute and regulations do not expressly define the word "employ," the director looked to ordinary dictionary definitions of "work" to interpret it.  The director concluded that one definition—"a labor, task, or duty that is one's accustomed means of livelihood"[30]—did not apply to Zachary and Stephen's activities.  However, the director concluded that under a second definition—"an activity in which one exerts strength or faculties to do or perform something"[31]—"[Doty] permitted his boys to work."

Doty argues that the Department should have used one of a number of common law tests, any of which would show he did not employ his sons.  But the tests he cites do not apply here.  First, he cites Cotton v. Weyerhaeuser Timber Co.[32] to argue that because he did not "'expressly'" hire Zachary or Stephen or "'suffer[ ] or permit[ ]'" them to work "'under circumstances where an obligation to pay [them] will be implied,'" he cannot be their employer.  Cotton, however,

---

[28] Wingert v. Yellow Freight Sys., Inc., 146 Wn.2d 841, 848, 50 P.3d 256 (2002) (internal quotation marks omitted) (quoting Manor v. Nestle Food Co., 131 Wn.2d 439, 445, 932 P.2d 628 (1997)).

[29] An almost identical definition is found in federal labor statutes such as the Fair Labor Standards Act of 1938, 29 U.S.C. § 203(g).

[30] Citing WEBSTER'S UNIVERSAL ENCYCLOPEDIC DICTIONARY 2130-31 (2002).

[31] WEBSTER'S, at 2130-31.

[32] 20 Wn.2d 300, 312, 147 P.2d 299 (1944).

involved an adult bringing a claim under the Fair Labor Standards Act of 1938.[33] The child labor laws do not require proof of an obligation to pay wages to prove employment. Adopting this requirement would thwart the laws' purpose by facilitating the economic exploitation of children.

Citing American Products Co. v. Villwock,[34] Doty also argues that because the record contains no evidence of a contract between him and the boys for a "'fixed compensation which [they] may use as [they] see fit'" and the boys are not emancipated, the Department cannot prove parental employment. But American Products involves a different factual and legal context—workers' compensation— and uses a "clear and convincing" test for a contractual relationship that is not in the statute at issue here.

Doty cites Anfinson v. FedEx Ground Package System, Inc.[35] to argue that the boys are economically dependent on him as children and that he directs and controls the boys' activities as a father, not an employer. Anfinson, however, does not involve child labor laws but the test to distinguish employees from independent contractors.[36] The statutes and regulations governing child labor include neither an economic dependence test nor a direction and control test. As the director noted, the legislature acted to regulate the health, safety, and welfare

---

[33] 29 U.S.C. §§ 201-219 (1938).
[34] 7 Wn.2d 246, 266-67, 109 P.2d 570 (1941).
[35] 174 Wn.2d 851, 281 P.3d 289 (2012).
[36] Anfinson, 174 Wn.2d at 866-71.

of minor workers, "thus expressly acting to change the common law relationship of employer-employee in RCW 49.12.121 and the regulations under it."[37] We conclude that the director did not err in using RCW 49.12 and WAC 296-125, rather than any of the tests Doty cites, to interpret "employ."

Doty maintains that the boys worked as part of the vocational and occupational training component of the family's homeschooling. But the boys' activities do not meet the six-part test for a training exemption from the child labor laws. Because the law prohibited the work the boys did, Doty cannot characterize it as training similar to that provided in a vocational school. Doty does not dispute that the boys' work benefited his business. Zachary and Stephen at times displaced regular employees and did not always work under Doty's observation. Because Doty did not use paid subcontractors for the tasks the boys performed, his business derived an immediate economic benefit from their activities. None of the other exemptions—house-to-house sales, casual or domestic labor at a private residence, or agricultural work—apply to Zachary and Stephen's work.

Doty does not dispute that he allowed the boys to help move houses, operate heavy machinery, and do a variety of other construction-related tasks as

---

[37] See Clausen v. Dep't of Labor & Indus., 15 Wn.2d 62, 69, 129 P.2d 777 (1942) (courts apply common law rules unless rules modified by statute).

part of Doty's business. We affirm the director's conclusion that Doty employed his sons in work not exempt from the child labor laws.

Doty's Constitutional and Statutory Rights as a Parent

Doty also contends that the Department's citations violate both his constitutional rights and his statutory right to direct their home-based occupational education.[38] He cites In re Custody of Smith[39] to support his assertion that the Department violated his freedom under the Fourteenth Amendment to the United States Constitution to "'establish a home and bring up children.'" But Smith does not support Doty's position. While our Supreme Court in Smith recognized a parent's "constitutionally protected right to rear his or her children without state interference,"[40] the court also noted that "the state may step in and override a decision of a parent where the decision would harm the child."[41] The Smith court singled out child labor as an area in which the State may exercise its authority, noting that the United States Supreme Court "found a

---

[38] Doty cites RCW 28A.200.020 and RCW 28A.225.010(4), which pertain to parents' rights and duties in conducting home-based education.

[39] 137 Wn.2d 1, 13-14, 969 P.2d 21 (1998) (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923)), aff'd sub nom. Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

[40] Smith, 137 Wn.2d at 15.

[41] Smith, 137 Wn.2d at 15-16.

narrow exception necessary in light of the 'crippling effects of child employment,' 'more especially in public places.'"[42]

Beyond his bare contentions, Doty does not explain how his constitutional and statutory rights to raise his children and direct their occupational education include a right to violate other statutes and regulations enacted to protect the safety, health, and welfare of minors. This claim fails.[43]

Designation of Violations as "Serious"

Doty challenges the director's findings that the alleged violations were "serious" and therefore justified higher penalties. The child labor laws define a violation as serious

> if death or serious physical harm has resulted or is imminent from a condition that exists, or from one or more practices, means, methods, operations, or processes that have been adopted or are in use by the employer, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.[44]

A serious or repeated violation subjects an employer to a penalty of up to $1,000 for each day the violation continues.[45]

---

[42] Smith, 137 Wn.2d at 16 (quoting Prince v. Massachusetts, 321 U.S. 158, 168, 64 S. Ct. 438, 88 L. Ed. 645 (1944)).

[43] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to review inadequately briefed assignment of error).

[44] RCW 49.12.390(2).

[45] RCW 49.12.390(2).

Doty argues that because the regulations listing prohibited minor activities do not use the terms "'serious,' 'harm,' 'injury,' or 'death' in a pertinent way," the director's conclusion of law "finds no anchor in the regulations or statute and floats unconnected to any authority." Doty also disputes that any danger to the boys was "imminent."

We disagree. As the director points out, the activities prohibited to minors are properly classified as "serious" as a matter of law because they are inherently hazardous:

> The list of occupations in WAC 296-125-030 and -033 identify work activity which by their very nature are dangerous and pose a substantial risk of harm which could result in serious physical injury or death. . . . Further, the practices by [Doty] of having his 11 year-old and 13 year-old children engage in activities known by law to be inherently dangerous for children shows that serious physical harm or death was imminent. Children 11 and 13 years of age are generally inexperienced at exercising sound and independent judgment necessary for work in inherently dangerous activities, as Zachary demonstrated when he rolled over the backhoe he was operating. The risk of harm is heightened when the children are especially young as in the case here.

Webster's Third New International Dictionary defines "imminent" as "ready to take place: near at hand: . . . hanging threateningly over one's head: menacingly near."[46] Contrary to Doty's assertion, the Department's use of the word "imminent" is not "strikingly vague" or a "redefinition" of the word. Rather, it

---

[46] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1130 (2002).

aptly describes the risks involved when minors engage in inherently dangerous work.

In challenging the Department's "serious" designations, Doty assigns error to several findings of fact. First, he alleges that the Department did not prove that Zachary's lifting of communication wires while on top of the moving house created a danger of electrical shock from induced voltage, calling the director's finding of fact "pure speculation." The director weighed testimony and declarations from both parties' experts on this issue and found, "The opinions of the Department experts, Miller, Ervin and Mcmurdie in this regard are more credible than those of [Doty's expert] Carl Plumb." Substantial evidence supports the director's findings, and "it is not the function of an appellate court to substitute its judgment for that of the trial court or to weigh the evidence or the credibility of witnesses."[47]

Doty also challenges the director's rejection of Plumb's opinion, based on an unrelated regulation, that because Zachary was only "observing rather than being engaged in activities," use of a safety monitor system in lieu of fall restraints or warning lines would have complied with the law. But videotaped evidence shows Zachary moving around on the roof and lifting traffic signals— much more than simply inspecting or observing. And Plumb's opinion ignores

---

[47] Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

the fact that the law prohibited 13-year-old Zachary from working on the roof at all. Substantial evidence supports the director's finding that Plumb's opinion was not credible.

Doty also disputes the director's finding that Plumb had an "erroneous belief that lack of a WISHA [Washington Industrial Safety and Health Act of 1973, chapter 49.17 RCW] violation precludes a serious violation of the child labor standards." But in his declaration, Plumb fails to acknowledge the stricter standards for minors, only observing that the boys' more dangerous activities, if performed by an adult, would "not violate specific WISHA safety standards." Substantial evidence supports this finding.

Next, Doty faults the director for not specifically listing the alleged missing safety equipment. But substantial evidence shows that the boys did hazardous work without safety harnesses, reflective vests, hard hats, or boots. And Doty cites no authority supporting a contention that the Department's failure to exactly itemize required safety equipment renders its finding erroneous or its action arbitrary or capricious. This claim fails.

Doty also challenges the director's findings that Zachary drove the backhoe on "uneven terrain," that drivers who tip over a backhoe "are thrown from the seat," and that Zachary "hit a temporary electrical wire while operating a backhoe." Doty does not dispute that Zachary, wearing no safety harness, tipped

over the backhoe while driving over ground that was "soft" in places. The director weighed testimony that Zachary drove too fast and in an unsafe manner. Substantial evidence supports the director's findings here.

Doty does not dispute the director's findings that on the days named in the Department's citations, he permitted (1) both Zachary and Stephen to drive heavy machinery, (2) both boys to perform various tasks at the construction sites, (3) Zachary to perform various activities more than 10 feet above ground level on the rooftop of a house moving along city streets, and (4) Zachary to work as an outside helper on city streets as part of Doty's house-moving business.

Substantial evidence supports the director's challenged findings of fact, and unchallenged findings are verities on appeal.[48] These findings support the director's conclusions of law that Doty employed his sons in work prohibited to minors. The findings likewise support the conclusion that these violations of state child labor laws were repeated and serious, warranting the penalties the Department assessed. We affirm the director's order upholding the Department's citations and penalties.

## Doty's Status as Judgment Debtor

For the first time on appeal, Doty argues that any judgment should have been entered against him as a married man in his separate capacity. This

---

[48] Kitsap County v. Kitsap Rifle & Revolver Club, ___ Wn. App. ___, 337 P.3d 328, 334 (2014).

argument fails. This court has declined to review a request to clarify the identity of the judgment debtor where a party did not raise the issue before the trial court.[49] Moreover, "[a] debt incurred by either spouse during marriage is presumed to be a community debt,"[50] and "[i]t is well settled that this presumption may be overcome only by clear and convincing evidence" that the parties have renounced the marital community.[51] Doty does not attempt to overcome this presumption, and our Supreme Court has overruled the case he cites for the proposition that his interest in community property should be shielded from execution to satisfy his separate obligations.[52]

<u>Attorney Fees</u>

Doty argues that he is entitled to attorney fees and costs. Because he has not prevailed on any issue, he is not entitled to this relief under any authority cited by him.

## CONCLUSION

Because the Department did not exceed its rule-making authority when it defined "employ," substantial evidence supports the director's findings, and those

---

[49] <u>Am. Disc. Corp. v. Shepherd</u>, 129 Wn. App. 345, 347 n.1, 120 P.3d 96 (2005); RAP 2.5(a).

[50] <u>Oil Heat Co. of Port Angeles, Inc. v. Sweeney</u>, 26 Wn. App. 351, 353, 613 P.2d 169 (1980).

[51] <u>Oil Heat Co.</u>, 26 Wn. App. at 353-54.

[52] <u>Stockand v. Bartlett</u>, 4 Wash. 730, 730-31, 31 P. 24 (1892), <u>overruling recognized by Haley v. Highland</u>, 142 Wn.2d 135, 142, 12 P.3d 119 (2000).

findings support the conclusion that Doty employed his sons and committed serious violations of child labor laws, we affirm. We decline to review Doty's claim that any judgment should be entered against him as a married man in his separate capacity and decline his request for attorney fees.

_Leach, J._

WE CONCUR:

_Spearman, C.J._                    _Appelwick, J._